Filed 8/18/16  P. v. Sainz CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE RICARDO SAINZ,<br><br>    Defendant and Appellant. | B261986<br><br>(Los Angeles County<br>Super. Ct. No. VA133968) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert J. Higa, Judge.  Affirmed in part, reversed in part, vacated in part, and remanded with directions.

Jean Ballantine, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Michael R. Johnsen, Shawn McGahey Webb and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Jose Ricardo Sainz appeals from the judgment entered after a jury convicted him of several crimes in connection with his February 15, 2014 sexual assault of Alejandra H. who lived in an adjacent apartment. The information charged appellant with kidnapping to commit forcible sexual penetration by a foreign object in count 1 (kidnapping) (Pen. Code, § 209, subd. (b)(1)[1]) and two counts of forcible sexual penetration by a foreign object in counts 2 and 3 (forcible penetration) (§ 289, subd. (a)(1)(A)).

The jury acquitted appellant of kidnapping on count 1 but convicted him of the lesser included offenses of false imprisonment by violence or menace (felony false imprisonment) (§§ 236, 237), attempted false imprisonment by violence or menace (felony attempted false imprisonment) (§§ 236, 237, 664), and misdemeanor false imprisonment (§ 236). We affirm the conviction for felony false imprisonment on count 1, but conclude the sentence[2] imposing punishment on that offense and additional punishment on count 2 constituted multiple punishments for the same conduct in violation of section 654. We reverse the convictions for felony attempted false imprisonment and misdemeanor false imprisonment as improper multiple convictions and direct the trial court to strike the allegations supporting those two convictions. We vacate the sentence, and remand for resentencing, on count 1.

The jury convicted appellant on count 2. We affirm the conviction but vacate the sentence and remand for resentencing on count 2, treating count 2 (as compared to count 1) as having the "longest potential term of imprisonment" within the meaning of section 654 as the greater offense.

---

[1]     Subsequent section references are to the Penal Code.

[2]     The court sentenced appellant to prison for a total of nine years, imposing six years on count 2, plus three years on count 3, and a concurrent two-year term on count 1.

The jury acquitted appellant of forcible penetration on count 3, but convicted him of several lesser included offenses: attempted forcible sexual penetration by a foreign object (attempted forcible penetration) (§§ 289, subd. (a)(1)(A), 664), battery (§ 242), and assault (§ 240). We affirm the battery conviction but reverse the conviction for attempted forcible penetration based upon instructional error. We reverse the conviction for assault as an improper multiple conviction and direct the trial court to strike the allegation supporting that conviction. We remand for resentencing as to the battery conviction.

*FACTUAL SUMMARY*

The testimony of 18-year-old Alejandra H. (Alejandra) established that on February 15, 2014, Alejandra lived with her parents in a South Gate apartment. Appellant lived in the same building, and his front door was about 15 feet away from hers. Alejandra testified that around 9:00 p.m. or 10:00 p.m., she was home, having returned from her boyfriend's house, when appellant came to visit her. Appellant eventually asked if she wanted tacos, and she said yes. Appellant left and returned with tacos, asking Alejandra to bring him any leftovers.

Alejandra testified she later went to appellant's apartment and gave him the leftovers. She was walking back towards her apartment when he called her and began talking to her and running towards her. Alejandra fled, but he caught her, picked her up, and carried her to his front porch. Although Alejandra was afraid, she physically and verbally resisted, unsuccessfully. Appellant set Alejandra down with her back against appellant's apartment wall and used his body to hold her there. Appellant kissed Alejandra on the neck and tried to kiss her lips, but she turned her head from side to side to avoid being kissed.

Alejandra was wearing a sweater and sweatpants. She testified appellant put one of his hands in her sweatpants and under her underwear, and when he inserted one of his fingers inside her vagina, she told him to stop. He put his other hand under her sweatpants and was "touching [her] . . . in [her] butt." Alejandra testified, "He just [slid] it inside [my butt] and he was touching me and he used all fingers." During cross-

3

examination, appellant asked Alejandra whether at a prior hearing she had testified appellant "didn't stick his fingers in [her] hole." She replied, "Not in the hole, but like in my butt cheeks."

Alejandra testified she was traumatized and tried to push appellant away, telling him to stop and release her. Appellant eventually complied. He apologized, Alejandra told him she did not forgive him, and he said what he had done was wrong. Alejandra told him to go inside his apartment. She did not feel safe returning to her apartment and waited until he entered his apartment before she entered hers. Alejandra was too afraid to tell her parents what had happened but told friends at school who told a teacher. On February 18, 2014, she spoke to police.

Toyetta Beukes, a registered nurse and director of the Sart Center, Sexual Assault Response Team at the San Gabriel Valley Medical Center, conducted a sexual assault examination on Alejandra. Beukes observed abrasions on Alejandra's posterior fourchette, perineum, and anal area. Beukes testified, "[t]he abrasions [were] consistent with [Alejandra's] history of penetration as a result of the finger or fingers penetrating the genital and the anal area, as a result of blunt force trauma." Beukes also testified that if Alejandra indicated the sexual assault occurred on February 15, 2014, that would be consistent with Beukes's findings. However, Beukes admitted during cross-examination the abrasions could have been more than three days old and she could not say with reasonable certainty that the abrasions were caused by anything other than consensual sex.

On February 20, 2014, South Gate Police Detectives Scott Guerrero and Ed Gomez interviewed appellant. During the interviews, which were recorded[3] and played to the jury, appellant made many statements including the following. "I went to bring the

---

[3] Although the transcript was not admitted into evidence, both parties cite and quote from the transcript; the prosecutor represents that each juror received a copy. We therefore accept the transcript as accurate. We have significantly excerpted the transcript to summarize it. The statements of Detective Guerrero and Detective Gomez are in brackets and boldfaced.

food to her, I brought her some tacos. . . .  [**Guerrero: Where at, at her house?**]  . . . I took her a taco plate there.  And I took mine . . . at that time . . . we were already . . . like playing around. . . . I tell her . . . 'You have pretty dimples.' . . .  And . . . she also began to do to me . . . she also me -- was to me. . . . She kicked me like this because she knows that I do that[.]  . . . [**Guerrero: . . . Flirting**]  Yeah.  Like flirting. . . .  I told her, 'I'm going because I'm tired . . . .' "

"And I am already eating and well suddenly she knocks on the door[.]  . . . And I said well what does she want; right? . . . And the girl well -- you know -- is with guys. . . . I turned off the light . . . and I told her . . . 'and for your countryman you didn't even give me a hug.'  You know flirting -- trying to flirt . . . then she tells me, 'Oh.'  She says, 'No.' She says.  'Not here.'  And she was also looking around . . . like who would come outside.  'Okay.  That's fine[,]' I tell her[.]  . . . Well I was in my yard and all, I told her, 'Okay.'  . . .  We were, like playing and all of that . . . I grab her, I hug her like this . . . I took her like this to the little corner and I -- I began to give her little kisses. . . . And then when she told me, 'Oh, no, you know what?  No.' . . .  [**Guerrero: Little kisses . . . what did you do?**]  No, no, I mean -- little kisses I - I hugged her -- well I grabbed her. [**Guerrero: Where?**]  On her body, yes. . . .  I mean . . . well yes I grabbed her. [**Guerrero: No, you grabbed her where?  You grabbed her vagina?**]  Yes I grabbed -- I grabbed yes.  [**Guerrero: Yes, you put your finger in her vagina?**]  I touched, yes I touched.  . . . [**Guerrero: . . . And you were also grabbing the butt; right?**]  Yes . . . like I told her, 'You know what?'  I tell her, . . . 'if I overstepped forgive me . . . .'  But she told me, 'Oh it's all right I forgive you.'  [**Guerrero: Okay.  And why are your neighbors telling me that they heard . . . the girl saying . . . 'no . . . stop.'**]  Uh-huh. No, no, no, no so much like that."

At a later point in the interview with Guerrero, appellant made further statements about the touching and Alejandra's requests that he "stop."

"[**Guerrero: She wasn't telling you that no, . . . not to do it? . . . [She] didn't say that, 'Stop'?**] Yes, me -- she told me, 'Hey you know -- you know what? Stop it if not [*unintelligible*].' 'Okay. That's all right.' I tell her. 'Sorry.' I tell her that was when I stopped. [It] wasn't my intention it wasn't even -- nor to penetrate her nor anything -- I mean -- nothing. . . . [**Guerrero: You . . . penetrated it with your fingers; right?**] I touched her no -- I didn't even get to -- do you understand me? . . . I mean . . . it was quick it wasn't about that . . . ."

After additional questioning, Guerrero asked whether appellant was taking the position the encounter was consensual.

"[**Guerrero: [Y]ou're telling me that it is something consensual that happened between you and her . . . ?**] No, no, no. . . . [S]he's been seen with other guys; right? . . . And . . . I don't know why it was my turn. . . . She flirts and . . . I was coming from a [martial arts] tournament . . . . I felt good."

After further questioning by Guerrero, Gomez took over the interview. Appellant's responses to Gomez's questions included the following statements.

"[**Gomez: I already know that you did it . . . you touched her vagina . . . I know that when she was with you she said, 'No.'**] . . . Like I tell him. I stopped. . . . [**Gomez: Okay. Then, when a person says that 'No' . . . you have to understand that you have to stop.**] [That's] when I stopped. [**Gomez: . . . but you grabbed her -- you touched her vagina . . . .**] Uh-huh. Yeah. [**Gomez: . . . And it's not going to happen again anymore. Yes?**] No, no, no. . . of course not. [**Gomez: . . . [W]hen you touched her vagina were you aroused or not?**] Wh--yes, yes, yes. . . . [**Gomez: . . . But you obviously put your finger inside her vagina and that was all.**] Uh--total. I didn't put it inside like this rather I touched it. [**Gomez: The lips.**] Uh--yeah, yes yes. [**Gomez: . . . With which fingers?**] Uh -- those. . . . [**Gomez: [B]efore that happened what . . . was going on . . . ?**] . . . I had hugged her . . . she told me, 'Oh Ricardo no.' . . . She told me like that. . . . Oh when I was hugging her? . . . Says that -- that she

6

didn't want to . . . . [**Gomez: She told you?**] Yes, yes she told me and then she said, 'Okay.' [**Gomez: And -- and what . . . did you do afterwards?**] Nothing. I just told her, 'Are you sure? And that yes; right?' . . . That was when . . . I put my hand inside like this and she told me, 'Oh wait.' [**Gomez: . . . Now, why after that she told you that she didn't want to why did you put your fingers inside -- why did you touch the lips of her vagina?**] Because of what you said. . . . No, but like you say as a man I mean -- one feels . . . . All aroused and -- but like I told you, when I saw that she didn't accede was when I stopped and I asked her forgiveness . . . . [**Gomez: And but after that she told you, 'No' you put** -- ] No it was when I touched her like this. [**Gomez: Then she said, 'No I don't want, I don't want . . . that you touch me.' And you put in -- you just grazed the --**] Yes, yes. [**Gomez: the vagina--**] Yes. [**Gomez: the lips of the vagina.**] Yes. [**Gomez: You made contact with your fingers.**] Yes I -- yes – no -- I don't know how far, right?"

Later on, Guerrero asked additional questions and elicited the following responses.

"[**Guerrero: [I] believe that you . . . had taken her from her house from her patio to your patio' . . . Why did you do that?**] I didn't take her. No, it's not that I had taken her . . . she knocked on the door there . . . in the patio. . . . I'm not like that of the persons that, 'Oh, come I'm going to carry you.' I could have done it. . . . I'm not that type of person. [**Guerrero: Then you did take her or but – but it was force--**] No, No. no. no. . . . I did not take her there."

Appellant did not testify at trial or present any evidence in his defense.

### *ISSUES*

Appellant claims (1) insufficient evidence supports his convictions for felony false imprisonment and attempted felony false imprisonment, (2) the trial court erroneously failed to provide an instruction *sua sponte* addressing the victim's withdrawn consent, (3) the trial court erroneously failed to instruct *sua sponte* on a *Mayberry*[4] defense (reasonable belief the victim consented) as to the charges of felony false imprisonment,

---

[4] *People v. Mayberry* (1975) 15 Cal.3d 143 (*Mayberry*).

(4) the trial court erred by giving CALJIC No. 3.33 (no intent necessary for certain crimes), (5) the matter must be remanded because there were sentencing errors, (6) all but the greatest lesser included offenses must be dismissed, (7) appellant is entitled to an additional day of custody credit, (8) the abstract of judgment must be corrected as to count 1, and (9) (in a supplemental brief) the trial court erred by failing to instruct on sexual battery as a lesser included offense of counts 2 and 3.

### DISCUSSION

1. *Sufficient Evidence Supports Appellant's Conviction for Felony False Imprisonment (Count 1).*

Appellant claims there is insufficient evidence supporting his conviction for felony false imprisonment. Appellant argues, "Here, the only 'force' used was the act of picking Alejandra up by her armpits and moving her to the porch, where appellant pushed her against the wall with his body. . . . There was no force, violence, or menace over and above that necessary to effect the false imprisonment." We reject appellant's claim.

" 'Force is an element of both felony and misdemeanor false imprisonment. Misdemeanor false imprisonment becomes a felony only where the force used is greater than that reasonably necessary to effect the restraint. In such circumstances the force is defined as "violence" with the false imprisonment effected by such violence a felony.' [Citation.]" (*People v. Castro* (2006) 138 Cal.App.4th 137, 140 (*Castro*).) [5] As appellant concedes, Alejandra testified she resisted as he picked her up, carried her about 15 feet to his porch, and pushed her against the wall. Consistent with *Castro*, we conclude appellant's forcible acts were more than what was required to keep her in place before he picked her up. Indeed, appellant's admissions to the detectives that, in his yard, he "grab[bed] her," "took her . . . to the little corner," and later grabbed her vagina and buttocks were enough to support the jury's reasonable conclusion to the same effect.

---

[5]   *Castro* concluded there was sufficient evidence to support the defendant's felony false imprisonment conviction but ultimately reversed based on the trial court's failure to instruct on misdemeanor false imprisonment as a lesser included offense. (*Castro*, *supra,* 138 Cal.App.4th at p. 144.)

8

Menace is defined as " 'a threat of harm express or implied by words or act. [Citations.]' [Citation.]" (*People v. Islas* (2012) 210 Cal.App.4th 116, 123 (*Islas*).) Alejandra's testimony she physically and verbally resisted appellant and was afraid and traumatized when he was moving her to his front porch was sufficient to support a conviction for false imprisonment by menace. (Cf. *People v. Aispuro* (2007) 157 Cal.App.4th 1509, 1513 (*Aispuro*); see *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)[6]

2. *The Court Did Not Err in Failing to Give a Withdrawn Consent Instruction.*

We review a claim of instructional error de novo. (*People v. Alvarez* (1996) 14 Cal.4th 155, 217.) To determine whether an instruction is correct, we review "the entire charge of the court, not . . . considering only parts of an instruction or one particular instruction." (*People v. Smith* (2008) 168 Cal.App.4th 7, 13.)

The court properly instructed the jury with respect to the prosecution's required proof of lack of consent on each of the crimes of which appellant was convicted[7] and also defined consent for purposes of kidnapping and forcible penetration as "positive cooperation in an act or attitude as an exercise of free will" using CALJIC 1.23.1. Appellant did not ask the court to give, and the court did not give *sua sponte,* the portion

---

[6]    Appellant's reliance on *People v. Matian* (1995) 35 Cal.App.4th 480, as suggesting menace requires use of a deadly weapon or verbal threats is misplaced. (See, *Islas, supra,* 210 Cal.App.4th at p. 125; *People v. Wardell* (2008) 162 Cal.App.4th 1484, 1491; *Aispuro, supra,*157 Cal.App.4th at p. 1513; *Castro*, *supra,* 138 Cal.App.4th at p. 143.)

[7]    The court instructed the jury false imprisonment is a lesser offense of felony false imprisonment (CALJIC No. 17.10); false imprisonment required "intentional restraint, confinement or detention which compels a person to stay or go somewhere without [his] [her] consent" (CALJIC No. 16.135); an "element[]" of false imprisonment was "[t]he other person did not consent to this restraint, confinement or detention" (CALJIC No. 16.135); forcible penetration is an act "against the victim's will," meaning "without the consent of the alleged victim" (CALJIC No. 10.30); an "element[]" of the offense was penetration "against the will of the alleged victim" (CALJIC No. 10.30); and attempted forcible penetration is a lesser offense of forcible penetration. (CALJIC Nos. 6.00 & 17.10).

of CALJIC No. 1.23.1 pertaining to withdrawn consent[8] (hereafter, the withdrawn consent instruction).

A trial court is under no duty to give an instruction unsupported by substantial evidence. (Cf. *People v. Tufunga* (1999) 21 Cal.4th 935, 944.) Alejandra denied she consented and appellant's statement to police officers does not indicate any initial consent. His statement does, however, provide evidence that after he was hugging her, and after she said, " 'Oh, Ricardo no' " and told him "she didn't want to," Alejandra said " 'Okay.' " He also told officers he verbally responded to her "okay" (" 'Are you sure? And that yes; right?' ") and then touched her vagina: "I put my hand inside like this . . . she told me, 'Oh wait.' " At that point, appellant "stopped and [asked for] her forgiveness."

The withdrawn consent instruction, CALJIC No. 1.23.1, states, "[a] person who initially consents and participates in the [sexual act] has the right to withdraw that consent" and goes on to explain that, to be effective, the victim must express the withdrawal of consent in "words or conduct . . . sufficient to cause a reasonable person to be aware that consent has been withdrawn." Under the facts as related by appellant to Guerrero and Gomez, Alejandra did not initially consent. She said no when he started hugging and kissing her and she told him she "didn't want to." When Gomez asked appellant if he was saying what happened between them was consensual, appellant said, "No, no, no." As there was no evidence of any initial consent, there was no reason to read the withdrawn consent instruction.

---

[8]    "A person who initially consents and participates in the act of _____ has the right to withdraw that consent. To be effective as a withdrawal of consent, the person must inform the other person by words or conduct that consent no longer exists, and the other person must stop. The words or conduct must be sufficient to cause a reasonable person to be aware that consent has been withdrawn. If the other person knows or reasonably should know that consent has been withdrawn, forcibly continuing the act of _____ despite the objection, is against the will and without the consent of the person." (CALJIC No. 1.23.1 (Fall 2014 ed.) p. 35.)

Even assuming Alejandra's "okay" constituted substantial evidence she later consented, but that she later withdrew consent, there was no dispute at trial whether the withdrawal of consent was effectively communicated. Appellant plainly understood her statement, "oh wait," as a withdrawal of consent because, in response, he "stopped and [asked for] her forgiveness." Since the touching of the victim's vagina and anus had already occurred, there was no need for the jury to decide whether "oh wait" adequately communicated a withdrawal of consent and no need to read the withdrawn consent instruction.

Weighing the strength of the prosecution's evidence against appellant's evidence, we further conclude appellant suffered no prejudice. It is not reasonably probable the outcome would have been more favorable had the instruction been given. (Cf. *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).)

3. *The Court's Failure to Give a* Mayberry *Instruction for Felony False Imprisonment Was Not Error.*

The trial court gave a *Mayberry* instruction (CALJIC No. 10.65) for forcible penetration (count 2). The instruction explained, "[t]here is no criminal intent if the defendant had a reasonable and good faith belief that the [victim] voluntarily consented to . . . penetration . . . unless the defendant thereafter became aware . . . the other person no longer consented." The trial court did not give the same instruction for felony false imprisonment (a lesser included offense of count 1). Appellant contends, and respondent concedes, there is a *Mayberry* defense to false imprisonment. We accept the concession. (*People v. Anderson* (1983) 144 Cal.App.3d 55, 64.)

However, appellant's argument "[t]here was substantial evidence appellant had an actual, reasonable belief that Alejandra initially consented to his touching" misses the mark. In a false imprisonment case, the defense is not based on a good faith belief the victim consented *to touching*, it is based on a belief the victim consented "to being restrained, confined or detained by appellant, compelling her to stay or go somewhere." (CALJIC 9.60) Nothing in Alejandra's trial testimony provided any basis for a good faith belief she consented to being picked up, carried, and pinned to a wall. Appellant, in

11

his statement to police, did not say he had a good faith belief she consented to being restrained, confined, or detained. Although he told Guerrero and Gomez she was flirtatious and promiscuous and said, "not here" and "okay," these statements support, at most, a good faith belief she consented to his touching. They do not support a good faith belief she consented to being restrained, confined, or detained. The trial court committed no error because there was no substantial evidence supporting a good faith belief defense to false imprisonment.

Moreover, considering the strength of the prosecution evidence and the relative dearth of evidence presented by defendant, any failure to provide the instruction did not cause prejudice. We therefore conclude it is not reasonably probable appellant would have achieved a more favorable result had the *Mayberry* instruction been given. (Cf. *Watson*, *supra,* 46 Cal.2d at p. 836.)

4. *The Court Did Not Prejudicially Err by Giving CALJIC No. 3.33.*

The trial court gave the jury CALJIC No. 3.33.[9] Appellant claims, and respondent concedes, this was error and we accept the concession. According to the Use Note for the instruction, No. 3.33 is for strict liability offenses. (Cf. *People v. Tanner* (1979) 95 Cal.App.3d 948, 956, fn. 5 (*Tanner*); Use Note to CALJIC No. 3.33 (Fall 2014 ed.) p. 215.) Appellant was not charged with any strict liability offenses.

However, we find no prejudice. The only pertinent offenses in CALJIC No. 3.33 of which appellant was convicted were felony false imprisonment and battery. False imprisonment is a general intent crime. (*People v. Fernandez* (1994) 26 Cal.App.4th 710, 716.) The trial court, using CALJIC No. 9.60, specifically instructed the jury that, for felony false imprisonment, the prosecution had to prove a "person *intentionally . . .*

---

[9]     That instruction provides, "[i]n the crime[s] of kidnapping, attempted kidnapping, false imprisonment by violence or menace, false imprisonment, attempted false imprisonment by violence or menace, attempted false imprisonment, assault, and battery . . . which are lesser crimes hereto, the doing of the act is a crime. The intent with which the act is committed is immaterial to guilt." (Some capitalization omitted.) The jury did not convict appellant of kidnapping, attempted kidnapping, or misdemeanor attempted false imprisonment.

12

restrained, confined, or detained another person, compelling [him] [her] to stay or go somewhere." (Italics added.) Indeed, all of the crimes of which appellant was convicted were at least general intent crimes and the court properly instructed the jury as to the intent required for each crime.[10] The court, using CALJIC No. 1.01, instructed the jury to consider the instructions as a whole. Any trial court error in giving CALJIC No. 3.33 was harmless under any conceivable standard. (Cf. *Watson*, *supra*, 46 Cal.2d at p. 836; *Chapman v. California* (1966) 386 U.S. 18, 24; see *Tanner, supra*, 35 Cal.App.3d at p. 957.)[11]

5. *Resentencing Is Warranted Because Section 654 Barred Multiple Punishment on Counts 1 and 2.*

Appellant claims the trial court's imposition of punishment on his conviction for felony false imprisonment (a lesser included offense of count 1) *and* his conviction on count 2 violated section 654. We agree. There was substantial evidence appellant committed the felony false imprisonment (a lesser included offense of count 1) with the objective of committing the forcible penetration at issue in count 2. As between those two convictions, section 654 barred punishment for felony false imprisonment (here, a two-year concurrent sentence) because forcible penetration (count 2) carried the longer potential imprisonment term. (Cf. *People v. Latimer* (1993) 5 Cal.4th 1203, 1205; *People v. Magana* (1991) 230 Cal.App.3d 1117, 1120-1121; §§ 237, 289, subd. (a)(1)(A), 654, subd. (a), 1170, subd. (h)(1).) We will remand with directions to resentence appellant by

---

[10] The court read CALJIC No. 6.00 (identifying "specific intent to commit the crime" as an element of the definition of attempt); CALJIC No. 9.60 (requiring proof "[a] person intentionally . . . restrained, confined, or detained another person, compelling [him] [her] to stay or go somewhere" for misdemeanor false imprisonment); CALCRIM No. 10.30 (requiring proof "[t]he [forcible] penetration was done with the purpose and specific intent to cause sexual arousal, gratification, or abuse"); and instructed the jury as to the general intent required for assault and battery.

[11] As it was not prejudicial, any failure to object to CALJIC No. 3.33 did not comprise constitutionally-deficient representation. We therefore conclude appellant was not denied effective assistance of counsel.

13

suspending execution of sentence imposed on count 1, pending completion of his sentence(s) on the remaining counts. (*People v. Pearson* (1986) 42 Cal.3d 351, 360.)[12] We express no opinion as to what appellant's new sentence, or any of its components, should be.

6. *Having Been Convicted on the Greater Offenses of Felony False Imprisonment (Count 1) and Battery (Count 3), Appellant Cannot Be Convicted of Lesser Included Offenses on the Same Counts (Attempted Felony False Imprisonment (Count 1), Misdemeanor False Imprisonment (Count 1), or Assault (Count 3)).*

The record contains minutes confirming "[a]ll other lessers found by the jury in count 1 and count 3, respectively, are ordered dismissed forthwith" but does not contain any reporter's transcript memorializing the announcement of the order in court. We must therefore conclude the dismissal was ineffective and appellant remains impermissibly convicted of multiple lesser included offenses. (Cf. *People v. Zackery* (2007) 147 Cal.App.4th 380, 385)

A defendant cannot properly be convicted of an offense and a lesser included offense. (*People v. Montoya* (2004) 33 Cal.4th 1031, 1034 (*Montoya*).) With regard to count 1, there is no dispute the greater offense is felony false imprisonment and the additional convictions for attempted felony false imprisonment and misdemeanor false imprisonment are lesser included offenses. We therefore reverse appellant's additional convictions for attempted felony false imprisonment and misdemeanor false imprisonment on count 1 and order the trial court to strike the allegations appellant committed the reversed offenses. (Cf. *People v. Medina* (2007) 41 Cal.4th 685, 701-703.)

---

[12]     We decline to address appellant's sentencing arguments relating to count 3 because we reverse the conviction on count 3.

14

Addressing count 3, we conclude *post* appellant's conviction for attempted forcible penetration must be reversed because of instructional error. Addressing the remaining convictions on count 3 for battery and assault, we note our reversal of appellant's conviction for attempted forcible penetration makes it unnecessary to reach the issue of whether his convictions for attempted forcible penetration and battery constituted impermissible multiple convictions.

Nonetheless, even if we reach the issue, we apply the statutory elements test (*People v. Sloan* (2007) 42 Cal.4th 110, 118 (*Sloan*)) to determine whether an appellant has suffered impermissible multiple convictions; the accusatory pleading test does not apply because notice is irrelevant to this determination. We employ that test here to uphold appellant's conviction for battery because it is not a lesser included offense of attempted forcible penetration.

In *People v. Marshall* (1997) 15 Cal.4th 1 (*Marshall*), our Supreme Court concluded battery is not a lesser included offense of attempted forcible rape because battery requires a touching of the victim and attempted forcible rape does not. (*Id.* at pp. 38-39.) *Marshall* observed, "For example, an attempted forcible rape would occur if a defendant pointed a gun at a woman and ordered her to submit to sexual intercourse, but the woman managed to escape without having been touched." (*Id.* at p. 39.) Applying the same reasoning, we conclude battery is not a lesser included offense of attempted forcible penetration. Appellant therefore stands properly convicted of battery.

Having been convicted of battery on count 3, appellant may not also be convicted of assault because assault is a lesser included offense of battery. (*People v. Ortega* (1998) 19 Cal.4th 686, 692; *People v. Colantuono* (1994) 7 Cal.4th 206, 216-217; *People v. Lopez* (1975) 47 Cal.App.3d 8, 15). We therefore reverse the conviction for assault and instruct the trial court to strike the assault allegation.

7. *The Court's Erroneous Failure to Instruct Sua Sponte on Sexual Battery Was Prejudicial on Count 3 Only.*

Appellant contends the trial court prejudicially erred by failing to instruct sua sponte on sexual battery (§243.4, subd. (a)) as a lesser included offense of counts 2 and 3 citing *People v. Ortega* (2015) 240 Cal.App.4th 956, 971 (*Ortega*). As our Supreme Court observed in *People v. Smith* (2013) 57 Cal.4th 232, 239 (*Smith*), " '[i]t is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence.' " As noted in *People v. Breverman* (1998) 19 Cal.4th 142, 162 (*Breverman*), "a trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence."

"For purposes of determining a trial court's instructional duties, we have said that 'a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser. [Citations.]' [Citations.]" (*Smith, supra,* 57 Cal.4th at p. 240.) " 'The accusatory pleading test arose to ensure that defendants receive notice before they can be convicted of an uncharged crime.' " (*Sloan, supra,* 42 Cal.4th at p. 118.)

In *Smith*, the information alleged a violation of section 69, which expressly punishes either of two alternative acts: (1) an attempt to deter or prevent an executive officer from performing a statutory duty or (2) a knowing resistance, by force or violence, of an officer in the performance of his duty. Applying the statutory elements test, *Smith* concluded a violation of section 148, subdivision (a)(1) was not a lesser included offense of section 69 because the statutory elements of section 148, subdivision (a)(1) (resisting, delaying or obstructing any public officer who is discharging or attempting to discharge his duties) were embraced in the conduct prohibited under the second part, but not the first part, of section 69. *Smith* reached a different conclusion under the accusatory pleading test. Although the statute separates the two potentially punishable acts with the

16

disjunctive "or," the *Smith* information used the conjunction "and" to charge the defendant with committing both acts punishable under section 69. Because the "accusatory pleading allege[d] both ways of violating section 69," *Smith* concluded the trial court erred in failing to instruct on the elements of section 148, subdivision (a)(1) even though the first act identified in section 69 could be committed without committing the lesser offense. (*Smith, supra,* 57 Cal.4th at pp. 244-245.)

"When the prosecution chooses to allege multiple ways of committing a greater offense in the accusatory pleading, the defendant may be convicted of the greater offense on any theory alleged [citation], including a theory that necessarily subsumes a lesser offense. . . . But so long as the prosecution has chosen to allege a way of committing the greater offense that necessarily subsumes a lesser offense, and so long as there is substantial evidence that the defendant committed the lesser offense without also committing the greater, the trial court must instruct on the lesser included offense." (*Smith, supra,* 57 Cal.4th at p. 244.)

In this case, the information tracked the statutory language of section 289, subdivision (a)(1)(A), accusing appellant, in each of counts 2 and 3, of a single act of forcible penetration "by foreign object." Section 289 prohibits forcible penetration, defining it in subdivision (k)(1) as "the act of causing penetration . . . by any foreign object, substance, instrument *or* device," and defining "foreign object, substance, instrument *or* device" in subdivision (k)(2) to "include any part of the body, except a sexual organ." (Italics added.) Therefore, unlike the case in *Smith,* in the present case neither count 2 nor count 3 charged appellant with committing two acts expressly prohibited by the statute, e.g., penetration by a "foreign object" and penetration by a "substance." The circumstances in *Smith* are therefore distinguishable and, notwithstanding respondent's suggestion to the contrary, *Smith's* holding does not apply here.

17

Appellant urges us to follow *Ortega,* where the relevant circumstances were identical to the circumstances in this case. In *Ortega*, and in the present case, the prosecution conducted a preliminary hearing presenting evidence of digital penetration and then filed an information tracking the statutory language by alleging a single act of penetration "by foreign object." (*Ortega, supra,* 240 Cal.App.4th at pp. 960-961.) *Ortega* applied an expanded accusatory pleading test, relying on the preliminary hearing transcript as well as the later-filed information, to find error based on a failure to instruct on the lesser included offense of sexual battery.

The *Ortega* court noted the common law rule requiring the prosecution to set forth the particular circumstances of the charged crime was displaced by amendments to section 952 which "allowed for a simplified form of pleading merely by tracking the statutory language of an offense." (*Ortega, supra*, 240 Cal.App.4th at p. 969.) On the other hand, notwithstanding section 952, "to comport with due process, the defendant was entitled to the transcript supporting the probable cause showing, whether that showing be by grand jury indictment or preliminary hearing. ([*People v. Pierce* (1939) 14 Cal.2d. 639], 646; [citation].)" (*Ortega*, at p. 969.)

Based on the notice to defendant provided by the evidence of digital penetration in the preliminary hearing transcript, which necessarily also proved a sexual battery, *Ortega* concluded the trial court erred by failing to instruct sua sponte on sexual battery. (*Ortega, supra,* 240 Cal.App.4th at pp. 960, 967-971.) "The mutual fairness concerns expressed in [*People v. Birks* (1998) 19 Cal.4th 108, 128] support our view that determining whether sexual battery is a lesser included offense of forcible sexual penetration in a case involving digital penetration should not hinge on whether the prosecutor chooses to mention fingers in the charging document. Here the prosecutor was bound by the preliminary hearing testimony to prove that defendant digitally penetrated [the victim's] vagina. Given that constraint on proof, felony sexual battery was necessarily a lesser included offense of forcible sexual penetration and it would be unjust to allow the prosecutor, by controlling the language in the charging document, to also control whether the jury considers that lesser offense." (*Ortega,* at p. 152.)

18

We are likewise persuaded that, under the circumstances of this case, sexual battery is a lesser included offense of forcible penetration for purposes of determining whether the trial court erred by failing to instruct sua sponte on the former offense as lesser included.

Respondent, however, citing *Montoya*, *Smith*, and *People v. Shockley* (2013) 58 Cal.4th 400 (*Shockley*),[13] argues that by relying on the preliminary hearing transcript as well as the accusatory pleading, *Ortega* impermissibly expanded the accusatory pleading test. Respondent's reliance on *Montoya* is inapposite. The issue in *Montoya* was whether a court properly could apply the accusatory pleading test to determine whether a defendant suffered *impermissible multiple convictions*. Our Supreme Court, assuming without deciding the test properly could be applied, applied it to conclude the defendant in that case did not suffer impermissible multiple convictions. (*Montoya*, *supra,* 33 Cal.4th at pp. 1035-1036.) Applying the test, our Supreme Court stated, "we consider *only* the pleading for the greater offense." (*Id.* at p. 1036.)

However, appellant is raising the issue of whether the trial court in the present case erroneously failed to instruct on a lesser included offense, not the issue of whether he suffered impermissible multiple convictions. Respondent's reliance on *Montoya* is misplaced for the additional reason that our Supreme Court in *Sloan* revisited the issue left open in *Montoya* and concluded courts are to use the statutory elements test, not the accusatory pleading test, to determine whether a defendant suffered impermissible multiple convictions. (*Sloan*, *supra,* 42 Cal.4th at p. 118.)

As noted above, *Smith* is distinguishable because the *Smith* information charged the defendant with committing *multiple* acts expressly prohibited by a code section (in *Smith*, the two acts expressly prohibited by section 69). Although *Smith* noted that for the accusatory pleading test the court "need not" look beyond the pleadings, it did not rule out reliance on the preliminary hearing transcript where, as in this case, the

---

[13]     *Montoya, Smith,* and *Shockley* predated our Supreme Court's January 27, 2016 denial of review in *Ortega*.

prosecution was restricted to proof of a *single* act (penetration by a "foreign object") to prove the defendant necessarily committed a lesser offense. (*Smith, supra,* 57 Cal.4th at p. 244.)

In *Shockley*, our Supreme Court considered whether a court presiding in a case involving an allegation of lewd and lascivious conduct with a child in violation of section 288, subdivision (a) had a sua sponte duty to instruct on simple battery as a lesser included offense. Relying exclusively on the statutory elements test where the information simply tracked the statutory language, our Supreme Court concluded simple battery was not a lesser included offense because the greater offense did not include an element of battery (the unwanted use of force). However, *Shockley* does not help respondent because that case did not present, and our Supreme Court did not in *Shockley* discuss, the issue of whether a court could consider preliminary hearing evidence when applying the accusatory pleading test to determine whether a trial court erroneously failed to instruct on a lesser included offense. We therefore reject respondent's contention that *Ortega* is inconsistent with *Montoya, Smith,* and/or *Shockley.*

Although a court has a duty to instruct sua sponte on lesser included offenses which find substantial support in the evidence, "reversal for instructional error requires a showing of prejudice under [*Watson*]. [Citation.]" (*Ortega, supra,* 240 Cal.App.4th at p. 971) In deciding whether a defendant has suffered prejudice under the *Watson* standard, we may consider the relative strength of the evidence. (*Breverman, supra,* 19 Cal.4th at p. 177.)

In this case, count 2 was based on an alleged forcible vaginal penetration. The jury was instructed on, but rejected, a conviction for attempted forcible penetration. Instead, the jury convicted appellant of forcible vaginal penetration. We conclude it is not reasonably probable a jury that rejected attempted forcible penetration and instead convicted appellant of forcible penetration would have, if instructed on sexual battery, acquitted appellant on the forcible penetration charge. We therefore affirm the conviction in count 2.

20

However, on count 3, where the jury acquitted appellant of forcible anal penetration but convicted him of attempted forcible anal penetration, we conclude there was prejudice because the evidence supporting the conviction was not strong. Alejandra told the jury appellant slid his hand inside "her butt," was touching her and using all of his fingers," and "stuck his fingers" "in her butt cheeks." Beukes testified the anal abrasions were consistent with digital penetration on February 15, 2014, but also admitted the abrasions could have been more than three days old. Meanwhile, as noted above, appellant commented, in his interview with Guerrero, "it wasn't my intention . . . to penetrate her . . . . I didn't even get to . . . it was quick [and] it wasn't about that."

Because the evidence of attempted forcible anal penetration was not particularly strong and was consistent with perpetration of a sexual battery only, we conclude the jury could have reasonably concluded the prosecution proved only the elements of sexual battery in violation of section 243.4, subdivision (a). Although we therefore reverse the conviction for attempted forcible penetration, appellant's conviction on count 3 for battery remains in place, subject to resentencing on remand.

### *DISPOSITION*

The sentences on all convictions are vacated but the judgment is otherwise affirmed with the following exceptions. We reverse (and direct the trial court to strike the allegations supporting) appellant's improper multiple convictions for lesser included offenses, i.e., the convictions for attempted felony false imprisonment and misdemeanor false imprisonment on count 1 and the conviction for assault on count 3. We direct the trial court to resentence and stay execution of sentence on the conviction for felony false imprisonment (count 1) pursuant to section 654. We reverse the conviction for attempted forcible penetration on count 3 based on instructional error. We remand for resentencing, including on appellant's battery conviction, consistent with this decision. We express no opinion as to the punishment(s) to be imposed. We also direct the trial court to award any appropriate precommitment credit[14] and to forward to the Department of Corrections and Rehabilitation a corrected abstract of judgment, consistent with this opinion.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


HOGUE, J.[*]

We concur:


EDMON, P. J.


LAVIN, J.

---

[14] Appellant claims he is entitled to one additional day of custody credit and notes the abstract of judgment identifies count 1 as kidnapping rather than false imprisonment. We are confident that, following remand, the trial court will award any appropriate precommitment credit and correct the abstract of judgment as necessary.

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.