Filed 9/29/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H038220 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1108629) |
| v. | |
| ANDREW ORTEGA, | |
| Defendant and Appellant. | |

Defendant Andrew Ortega was charged with sexual penetration by force. A jury found defendant not guilty of the charged offense but guilty of the lesser included offense of assault with intent to commit sexual penetration by force. Defendant argues that sexual battery is also a lesser included offense of forcible sexual penetration and that the trial court erred by failing to instruct sua sponte on sexual battery. We will conclude that evidence received at the preliminary hearing to support the information should have been considered in determining whether forcible sexual penetration necessarily encompasses sexual battery, because the two offenses have the same mens rea and the particular conduct supporting a holding order for the charged offense established the lesser offense. Our conclusion takes into account due process principles of notice and fairness, as well as a defendant's right to have the jury determine every material issue presented by the evidence. We will reverse the judgment because we find that defendant was prejudiced by the failure to instruct the jury on sexual battery as a lesser included offense.

## I. TRIAL COURT PROCEEDINGS

Defendant was charged by information with sexual penetration by force.  (Pen. Code, § 289, subd (a)(1)(A); count 1.)[1]  Referencing only the statutory elements of the offense, the information alleged defendant committed sexual penetration "against the will of [victim Doe] by force, violence, duress, menace, and fear of immediate and unlawful bodily injury."  In the same manner, the information alleged defendant attempted oral copulation (§§ 664, 288a, subd. (c)(2)(A); count 2), and attempted to dissuade the victim from reporting a crime (§ 136.1(b)(1); count 3).  The trial evidence is summarized below.

### A. THE PROSECUTION'S CASE

#### 1. Victim's Testimony

Doe met defendant in a GED class when she was 18 years old.  She estimated their class attendance overlapped for "[m]aybe two or three weeks."  Defendant, who was 31, told Doe he was 19 and offered to help her with math assignments.  Although Doe was not interested in defendant romantically, she exchanged cell phone numbers with him for math help.

Doe missed class in early March 2011 due to her mother's hospitalization, and she communicated with defendant by text message during that time period.  Doe was surprised at trial to see 10 pages of cell phone records showing text messages between herself and defendant.  She maintained that their messaging focused on school and her mother's health, and not a romantic pursuit.

On March 10, Doe met defendant at A. J. Dorsa Elementary School (Dorsa) near her home to receive math homework.  After a brief exchange with her former kindergarten teachers at the entrance to the school, Doe and defendant proceeded to picnic tables near a field next to the cafeteria.  Defendant offered Doe some alcohol from his backpack, which she refused.  Defendant tried to kiss Doe, but she turned her head so

---

[1] Unspecified statutory references are to the Penal Code.

he kissed her cheek. Doe rebuffed defendant's further attempts to kiss her and, feeling uncomfortable, decided to leave. Defendant stopped her and pushed her hard against a wall. Defendant held Doe's wrist with one hand and put his other hand under her bra. She told him to stop. He then put his hand down her pants and put his fingers in her vagina. Defendant's fingers scratched Doe and she started to cry. She repeatedly yelled at him to stop, but she did not scream because she did not see anyone who could have come to her aid. As he moved his fingers in and out of her vagina, defendant told Doe to stop complaining and enjoy it and that he was doing her a favor. Although she did not remember how her pants came down, Doe moved her feet around so defendant could not take her pants lower than her mid thigh. Defendant then pushed Doe to her knees, held her there, and told her to suck his penis. She kept her head turned away and did not comply. She believed his penis was exposed because defendant was trying to unbutton his pants and she saw "something." She tried to get up and he repeatedly pushed her back to her knees. Finally defendant released Doe, and she ran home. Defendant followed her on his bicycle and repeatedly told her not to tell anyone what had happened or he would hurt her mother. Doe did not call or text defendant after she returned home. Defendant texted Doe the next day but she did not respond.

Doe immediately took a shower. Then she told her mother defendant "pushed me against the wall, and that he put his hands inside of me." Doe did not immediately report the incident to police because she took defendant's threats seriously and was scared. But six days later Doe reported the incident because she did not want someone else to get hurt, and she would not know what to say to her younger cousins if something similar ever happened to them. Doe told the responding officer during an initial interview that defendant touched her breast, put his fingers in her vagina against her will, and pushed her to her knees and ordered her to suck his penis.

Detective Fregger interviewed Doe on April 4 and helped her make a pretext phone call to defendant. A recording of the call was played for the jury. During that call,

3

Doe asked defendant why, when she kept saying no, he put his hand under her blouse and under her pants. Defendant said he was under the influence that day and honestly did not remember that much. Then he told Doe he knew she was going to say '[n]o,' and he did her a favor by looking out for her. He said she should thank him because "any other man would not have taken '[n]o' for an answer." He said "that was a one-shot, one-time offer, one-time deal[.]" Doe retorted, "I didn't want you to put your fingers in my vagina, I didn't want that to happen." Defendant responded, "I didn't do that, I don't remember that happening," and "I'm sorry I, if that's what happened, and you told me 'No,' then I'm sorry. But as far as you, like telling me 'Yes' and then telling me 'No,' … I'm sorry, I got the wrong message."

Doe testified on cross-examination that she felt vaginal pain and burning when she returned home from Dorsa, but she did not check to see if she was bleeding from her vagina at that time. Later she testified that she checked for bleeding in the shower because she wanted to know whether she was still a virgin. When initially interviewed on March 16, she answered "no" to the officer's question "did you bleed at all?" and "no" to the continuation of the question "when you came home?" But she also testified on cross-examination: "[T]he correct answer was I bled in the front a little bit. If you look at the page right there," referring to the transcript of her initial interview. She testified that she could not remember whether she mentioned bleeding or pain to Detective Fregger on April 4 without seeing a transcript of her interview, but later she answered "yes" when asked "You were specifically asked those questions by Detective Fregger three weeks after the incident in April, and you said no pain, no bleeding, right?"[2] She testified that she did not mention bleeding or pain at an August 18 meeting with the District Attorney. She then explained that her questioners at that meeting were all men and she did not want to tell a man what was going on. She acknowledged testifying at

---

[2] Detective Fregger testified that Doe never told him anything about bleeding.

the August 19 preliminary hearing that she bled a couple of drops, and that she was still feeling pain and discomfort at the time of that hearing. When pressed, she admitted she was not having pain or discomfort on August 19, but she had had pain lasting five months.[3] She denied consensually kissing defendant.

Doe testified on cross-examination that she sent an untrue text message to a friend in June 2011 telling him she was married. She also texted friends in June 2011 about drinking,[4] but, according to Doe, those messages were inside jokes and not about alcohol. Doe only drank alcohol at church on Sundays.

Doe and her mother shared a cell phone. Although she took the phone with her to meet defendant, and she used it to arrange a new meeting place with defendant, she gave the phone to her mother's friend outside her home before meeting defendant. But Detective Fregger testified that Doe told him the incident occurred when her mother was calling her. When presented with her inconsistent statement to Detective Fregger, Doe said she had a deactivated phone in her pocket with music downloads and an alarm clock. When asked to explain what she meant when she told Detective Fregger that her mother was calling her at Dorsa and she could feel the phone, she testified that she did not remember and could not explain. On redirect, Doe testified that she was not certain whether she had a deactivated phone with her at the school.

### 2.    Doe's Mother's Testimony

On March 10 Doe left home to get homework from a schoolmate. Doe returned disheveled, took a shower, and then told her mother that defendant tried to pull her pants down and hurt her with his finger. Doe's mother texted defendant that night and the

---

[3] On redirect, Doe affirmed that she told the officer at her initial interview that she "bled in the front a little." She also testified that the assault was not discussed at the August 18 District Attorney meeting, and that she was feeling discomfort during the time period around the preliminary examination.

[4] Those messages read: "Here's to you. I'm gonna drink a shot for you;" "drinking, WBU?" "bought beer;" and "guess what I'm gonna do tonight, drink."

following day. Doe's mother never let Doe leave the house without a cell phone, and, although she could not be sure, she thought Doe had the cell phone with her when she left to meet defendant.

### 3. Doe's Kindergarten Teachers' Testimony

Doe's kindergarten teachers remembered Doe from elementary school and considered her an honest person. They saw Doe with a man on a bicycle as they were leaving Dorsa, and the four visited for about 10 or 15 minutes. Neither could remember the date, but one testified that it was around 6:00 p.m. after they finished teaching the first hour of a parent literacy class. Childcare was provided in the cafeteria during that class, and there was usually a break at 6:00 p.m. when parents would visit their children in the cafeteria.

## B. THE DEFENSE CASE

### 1. Ann Foster's Testimony

Ann Foster taught the GED class where defendant and Doe met. According to Foster's voluntary sign-in records, Doe attended class four times-on February 22, 23, 24, and on March 2. Defendant attended 12 classes starting on February 28. His second class was on March 2, and he attended five more classes before March 10. Foster did not remember seeing Doe, who was quiet in class, interact with defendant. Based on four class sessions, an office visit, and phone calls with Doe, Foster did not consider Doe to be a truthful or trustworthy person.

### 2. Olga Madera's Testimony

Olga Madera was a neighborhood association president who oversaw a neighborhood walk from Dorsa's parking lot on March 10. The parking lot abutted the field next to the picnic tables near the cafeteria. Madera was in the parking lot on March 10 from 6:00 p.m. to 7:30 p.m. She could not see the picnic tables from where she stood. She did not hear a woman yell "stop" or see a man following a woman on a bicycle.

6

## C. PHONE RECORDS

The parties stipulated to the accuracy of cell phone records showing 335 text messages and 12 calls between defendant's and Doe's phones between March 2 and March 10. The records show texts from Doe's phone to defendant's phone on March 10 at 3:27 p.m., 5:09 p.m., and 5:36 p.m. Defendant texted Doe at 6:00 p.m. At 6:24 p.m., a series of messages initiated by Doe were exchanged roughly every 5 minutes until about 8:00 p.m., with three final exchanges occurring during the 10:00 p.m. hour. The parties further stipulated that the content of the text messages between the two phones during March 2011 had not been preserved by the phone companies.

## D. INSTRUCTIONS, VERDICTS, AND SENTENCING

The court instructed the jury on forcible sexual penetration and the lesser included offenses of attempted sexual penetration by force (§§ 664, 289, subd. (a)(1)), assault with intent to commit sexual penetration by force (§§220, subd. (a), 289, subd. (a)(1)), simple battery (§ 242), and simple assault (§ 240). Neither party requested that the jury be instructed on sexual battery as a lesser included or lesser related offense. With respect to attempted oral copulation, the court instructed the jury on the lesser included offenses of assault with intent to commit oral copulation (§§ 220, subd. (a), 288a) and simple assault (§ 240). No lesser included instructions were requested or given on the attempting to dissuade a witness charge.

The jury found defendant not guilty of forcible sexual penetration but guilty of the lesser included offense of assault with intent to commit sexual penetration by force. The jury was unable to reach verdicts on the other counts, and the court dismissed them on request of the prosecutor at sentencing. Defendant was sentenced to the lower term of two years in state prison followed by three years of parole supervision.

## II. DISCUSSION

Defendant argues that the trial court erred by failing sua sponte to instruct the jury on sexual battery, which he contends is a lesser included offense of forcible sexual

7

penetration.  A trial court must instruct sua sponte on any lesser included offense "which find[s] substantial support in the evidence."  (*People v. Breverman* (1998) 19 Cal.4th 142, 162 (*Breverman*).)  In determining whether an offense is a lesser included offense, we apply a de novo standard of review.  (*People v. Licas* (2007) 41 Cal.4th 362, 366.)

Penal Code section 1159 provides that a defendant may be found "guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense."  The California Supreme Court has defined a lesser offense as necessarily included within the charged offense "if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser."  (*People v. Birks* (1998) 19 Cal.4th 108, 117 (*Birks*), citing *People v. Lohbauer* (1981) 29 Cal.3d 364 (*Lohbauer*) and *People v. Marshall* (1957) 48 Cal.2d 394 (*Marshall*).)

## A.    THE STATUTORY ELEMENTS TEST

Penal Code section 289, subdivision (a)(1)(A) prohibits acts of sexual penetration "when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person[.]"  " 'Sexual penetration' " is "the act of causing the penetration, however slight, of the genital or anal opening of any person or causing another person to so penetrate the defendant's or another person's genital or anal opening for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object."  (§ 289, subd. (k)(1).)  Any body part other than a sexual organ is deemed a "foreign object, substance, instrument, or device."  (*Id*., subd. (k)(2).)

Penal Code section 243.4, subdivision (a) defines sexual battery as "touch[ing] an intimate part of another person while that person is unlawfully restrained by the accused or an accomplice, and if the touching is against the will of the person touched or is for the purpose of sexual arousal, sexual gratification, or sexual abuse[.]"  Touching as used in

8

that section is defined as "physical contact with the skin of another person whether accomplished directly or through the clothing of the person committing the offense." (§ 243.4, subd. (f).) Misdemeanor sexual battery contains the same elements except that unlawful restraint is not required. (§ 243.4, subd. (e)(1).) The touching element of misdemeanor battery also is different, as contact with the victim's skin is not required but may occur through clothing. (§ 243.4, subd. (e)(2).)

Defendant argues that sexual battery is a lesser included offense of forcible sexual penetration under the statutory elements test because forcible sexual penetration cannot be committed without also committing sexual battery. We agree that penetration by "force, violence, duress, menace, or fear of immediate and unlawful bodily injury" cannot occur without the victim being unlawfully restrained. We also accept defendant's position that "sexual," as used in the phrase "sexual arousal, gratification, and abuse" in section 289, subdivision (k) (defining "sexual penetration") modifies both gratification and abuse and thus has the same meaning as the "sexual arousal, sexual gratification, and sexual abuse" element of sexual battery.

The Legislature has defined " 'touch[ing]' " for purposes of sexual battery as requiring "physical contact" with the victim. (§ 243.4, subds. (e)(2), (f).) " 'Courts should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage.' " (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 719.) The Oxford English Dictionary defines "physical" as "of or relating to the body; bodily (as distinct from mental); corporeal," and "involving or inclining toward bodily contact or activity." (Oxford English Dict. (Online Sept. 2015) http://www.oed.com/view/Entry /143120.) The term "physical contact" therefore requires that the offender's body contact the victim's skin either directly or through the offender's clothing. (§ 243.4, subd. (f).)[5] The sexual battery statute does not encompass

---

[5] In the case of misdemeanor sexual battery, the physical contact also can be accomplished through the victim's clothing. (§ 243.4, subd. (e)(2).)

9

touching by a foreign object other than the offender's body. In contrast, sexual penetration by force is not limited to physical contact and can be broader: Penetration may be caused "by any foreign object, substance, instrument, or device, or by any unknown object." (§ 289, subd. (k)(1).) Because the forcible sexual penetration statute encompasses different types of contact than the sexual battery statute, it is possible to commit the greater without committing the lesser (e.g., where penetration is accomplished by means other than a part of the perpetrator's body.) Sexual battery is therefore not a lesser included offense of forcible sexual penetration under the statutory elements test.

### B.   THE ACCUSATORY PLEADING TEST

In supplemental briefing, defendant argues that sexual battery is a lesser included offense of forcible sexual penetration in this case under an expanded accusatory pleading test. Due process principles of fairness, and defendant's right to be prosecuted only on the noticed charges consistent with the probable cause showing supporting the accusatory pleading, compel us to agree that sexual battery is a lesser included offense of forcible sexual penetration where, as here, the preliminary hearing testimony identified defendant's fingers as the only object supporting the forcible sexual penetration charge.

The Attorney General cites *Birks*, *Marshall*, and *Lohbauer* to argue that the probable cause showing is not relevant under the accusatory pleading test. But the due process principles relied on in those cases support, rather than undermine, our conclusion. The evidence adduced at the preliminary hearing must be considered in applying the accusatory pleading test when the specific conduct supporting a holding order establishes that the charged offense necessarily encompasses a lesser offense.

Adopting the accusatory pleading test, *Marshall* concluded that the specifically charged allegations contained in the accusatory pleading, rather than the statutory definition of the charged offense, constitute the measuring unit for determining what offenses are necessarily included in the charge. (*Marshall*, *supra*, 48 Cal.2d at p. 405.)

10

In *Marshall*, the information alleged that defendant committed robbery (§ 211) by willfully, unlawfully, feloniously, and forcibly taking an automobile from the immediate presence of another person. (*Marshall*, at p. 396.) After a bench trial, the court found defendant guilty of taking another's vehicle without consent, under former Vehicle Code section 503. Defendant challenged that conviction, arguing that the statutory definition of robbery does not necessarily include offenses prohibited under Vehicle Code section 503. In concluding that the lesser included offense inquiry was determined by the specific allegations in the accusatory pleading, as opposed to the statutory elements of robbery, the court stressed that defendant was put on notice by the information that he should be prepared to defend against a showing that he took the automobile. (*Marshall*, at p. 405.)

Admittedly, this appeal is distinguishable from *Marshall*, where the accusatory pleading provided greater detail than the statutory definition of robbery by identifying the personal property taken from the victim. Here, instead of identifying defendant's finger as the means of penetration in the same way the information in *Marshall* identified the automobile as the victim's property, the information merely tracked the statutory language of section 289, subdivision (a)(1)(A). Had the information identified defendant's finger as the object causing the alleged forcible sexual penetration, the information would have contained the elements of a felony sexual battery, and sexual battery instructions would have been required as a lesser included offense because the record contains substantial evidence from which the jury could reasonably have doubted an element of sexual penetration by force[6] but could have found defendant guilty of sexual battery by touching but not penetrating Doe's genitalia. (*Birks*, *supra*, 19 Cal.4th at p. 118; *Breverman*, *supra*, 19 Cal.4th at p. 162.) But the salient point in *Marshall*-that the specific language in the information could inform the lesser included offense question

---

[6] During the pretext phone conversation initiated by Doe, defendant did not deny a sexually charged encounter with Doe, but he did deny putting his fingers in Doe's vagina.

11

because the information provided defendant with notice of the lesser included offense-supports our conclusion that the accusatory pleading cannot be examined in isolation. The due process principle that informed *Marshall* requires that the facts derived from the preliminary hearing be factored into the accusatory pleading analysis. *Marshall* also speaks to fairness to the prosecution to be allowed to frame its pleading to obviate a possible variance between pleading and proof. (*Marshall*, at p. 406.) However that charging discretion ultimately is constrained by the facts supporting the information or indictment.

"Due process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial." (*In re Hess* (1955) 45 Cal.2d 171, 175.) Penal Code section 952, governing rules of criminal pleading, was amended in 1927. Deviating from the common law requirement that the accusatory pleading set forth the particular circumstances of the offense charged, new section 952 allowed for a simplified form of pleading merely by tracking the statutory language of an offense. (*People v. Pierce* (1939) 14 Cal.2d 639, 645–646.) But, to comport with due process, the defendant was entitled to the transcript supporting the probable cause showing, whether that showing be by grand jury indictment or preliminary hearing. (*Id*. at p. 646; § 870.) "[A] preliminary hearing transcript affording notice of the time, place and circumstances of charged offenses ' "is the touchstone of due process notice to a defendant." ' " (*People v. Pitts* (1990) 223 Cal.App.3d 606, 908.) The transcript is integral to the accusatory procedure because, consistent with a defendant's due process right to notice, a defendant cannot be prosecuted for an offense not shown at the preliminary hearing to have been committed. (*People v. Graff* (2009) 170 Cal.App.4th 345, 360–361; *People v. Dominguez* (2008) 166 Cal.App.4th 858, 866.)

Section 289, subdivision (k)(1) defines " '[s]exual penetration' " as "the act of causing the penetration … of the genital or anal opening … by any foreign object,

12

substance, instrument, or device, or by any unknown object." Subdivision (k)(2) defines a " '[f]oreign object, substance, instrument, or device,' " as including "any part of the body, except a sexual organ." Although the information did not identify whether the penetration was genital or anal, nor did it identify the "foreign object, substance, instrument, or device" causing the penetration, the preliminary hearing testimony supported only one means by which defendant committed sexual penetration: by inserting his fingers into Doe's vagina. Defendant's due process right to rely on that testimony extends not only to his right to prepare a defense but also to his right to have a jury decide all necessarily included lesser offenses identified by that testimony.

*Birks* also informs our decision. In *Birks*, *supra*, 19 Cal.4th 108, the California Supreme Court addressed a defendant's right to instructions on lesser related offenses-offenses that are related to but not necessarily included in the stated charge-overruling *People v. Geiger* (1984) 35 Cal.3d 510. *Geiger* had held that a defendant had a state constitutional right to a requested lesser related offense instruction, that the prosecution had no right to object to such a request, and that the prosecution needed a defendant's consent to any lesser related instruction it sought. (*Birks*, at pp. 119–120.) In concluding that a defendant does not have the right to an instruction on lesser related offenses, the *Birks* court noted mutual fairness concerns underpinning a trial court's sua sponte duty to instruct a criminal jury on a necessarily included lesser offense, a duty recognized in the first instance by the California Supreme Court in *People v. Hood* (1969) 1 Cal.3d 444, 450. *Birks* explained: "This venerable instructional rule ensures that the jury may consider all supportable crimes necessarily included within the charge itself, thus encouraging the most accurate verdict permitted by the pleadings and the evidence. The rule also accords both parties equal procedural treatment, and thus benefits and burdens both to the same degree. Neither party is unfairly surprised by instructions on lesser necessarily included offenses because, by definition, the stated charge gives notice to both that all the elements of any such offense are at issue. By the same token, neither

party has a greater right than the other either to demand, or to oppose, instructions on lesser necessarily included offenses." (*Birks*, at p. 112.)  The sua sponte instructional rule "prevents either party whether by design or inadvertence, from forcing an all-or-nothing choice between conviction of the stated offense on the one hand, or complete acquittal on the other.  Hence, the rule encourages a verdict, within the charge chosen by the prosecution, that is neither 'harsher [n]or more lenient than the evidence merits.' " (*Id*. at p. 119.)  Guided by those principles, the court concluded that the *Geiger* rule promoted unfairness by giving the defendant the unilateral right to require or prevent the consideration of lesser non-included offenses.  (*Id*. at p. 126.)

The mutual fairness concerns expressed in *Birks* support our view that determining whether sexual battery is a lesser included offense of forcible sexual penetration in a case involving digital penetration should not hinge on whether the prosecutor chooses to mention fingers in the charging document.  Here, the prosecutor was bound by the preliminary hearing testimony to prove that defendant digitally penetrated Doe's vagina.  Given that constraint on proof, felony sexual battery was necessarily a lesser included offense of forcible sexual penetration, and it would be unjust to allow the prosecutor, by controlling the language in the charging document, to also control whether the jury considers that lesser offense.  (*Birks*, *supra*, 19 Cal.4th at p. 128.)

*Lohbauer*, *supra*,  29 Cal.3d 364 is distinguishable.  The defendant in *Lohbauer* appealed a misdemeanor conviction for unauthorized entry into a non-commercial dwelling under section 602.5.  Lohbauer was charged with burglary (§ 459), and he argued that unlawful entry was not a lesser included offense of burglary because unlawful entry was neither charged nor necessarily included within the statutory definition of burglary.  (*Lohbauer*, at pp. 368–369.)  The prosecution argued that the preliminary hearing testimony put defendant on notice of the specific conduct supporting the burglary charge-conduct that constituted unlawful entry; therefore, he could not have been misled or prevented from preparing an effective defense to that offense.  (*Id*. at p. 370.)  The

14

*Lohbauer* court rejected that argument, reasoning "where the actor's state of mind is an essential element of an offense, as where it is charged that the entry is 'with the intent to commit theft,' notice of 'conduct' alone cannot be said fairly to forewarn a defendant of other specific crimes which may be proven against him." (*Ibid.*) In contrast to *Lohbauer*, where the court was faced with whether preliminary hearing testimony could put a defendant on notice that the prosecution intended to prove a general intent misdemeanor when a specific intent felony offense was charged, here forcible sexual penetration and sexual battery share the same mens rea-that the act be done with a sexual intent. With the preliminary hearing transcript factored into the accusatory pleading analysis, there was no conflicting mens rea, and thus no uncertainty that defendant's conduct encompassed sexual battery.

## C. PREJUDICE

A trial court must instruct sua sponte on any lesser included offense "which find[s] substantial support in the evidence." (*Breverman*, *supra*, 19 Cal.4th 142, 162.) Still, reversal for instructional error requires a showing of prejudice under *People v. Watson* (1956) 46 Cal.2d 818, 836. (*Breverman*, at p. 149.) "This test is not met unless it appears 'reasonably probable' the defendant would have achieved a more favorable result had the error not occurred." (*Ibid.*)

When the court fails to instruct on a lesser included offense, the error is not prejudicial if "the factual questions posed by the omitted instructions" were necessarily resolved "adversely to defendant under other properly given instructions." (*People v. Lewis* (2001) 25 Cal.4th 610, 646 (*Lewis*).) In *Lewis*, the defendant was convicted of first degree murder, as well as robbery and burglary. The jury was instructed on theft as a lesser included offense, which would require a finding that the defendant formed the intent to steal only after he entered the victim's apartment. (*Id.* at p. 646.) On appeal, the defendant argued that he was also entitled to instructions on involuntary manslaughter as a lesser included offense to murder on the theory that he had mistakenly entered the victim's apartment believing it to be that of an acquaintance. (*Id.* at p. 644.) According to the defendant, his mistaken entry, coupled with a keyed-up state of mind and drug and alcohol impairment, resulted in his killing "without due caution and circumspection." (*Ibid.*) The *Lewis* court rejected that argument because, by finding the defendant guilty of burglary and robbery but not theft, the jury necessarily found that the defendant had formed the intent to steal before entering the victim's apartment. (*Id.* at p. 646.) That finding by the jury foreclosed the defendant's scenario of mistakenly entering the victim's apartment. (*Ibid.*) *Lewis* therefore concluded that any error in failing to instruct on manslaughter was harmless. (*Ibid.*)

The Attorney General argues that any error in not instructing on sexual battery is harmless under *Lewis*. The Attorney General's theory is that because the jury necessarily found that defendant willfully used force against Doe and had specific intent to commit assault with the intent to commit sexual penetration, and because the jury rejected other lesser crimes (attempted forcible sexual penetration, simple battery, and simple assault), the jury necessarily rejected the elements of sexual battery. In contrast to *Lewis*, however, the jury here did not necessarily reject all facts that could have supported a sexual battery conviction. The jury's findings-that defendant "did an act that by its nature would directly and probably result in the application of force to [Doe]" and that he

16

acted "willfully" and with the "intent[] to commit assault with the intent to commit sexual penetration"-do not foreclose a finding of sexual battery, which requires defendant to have touched an intimate part of Doe's person for a sexual purpose. (§ 243.4, subds. (a), (e)(1).) Nor did the jury's rejection of the lesser included offenses of simple battery and simple assault constitute a rejection of the elements of sexual battery, because simple battery and simple assault do not include a sexual intent. Accordingly, the error is not harmless under the reasoning of *Lewis*.

The jury was unable to reach verdicts on the charges of attempted oral copulation and attempting to dissuade a victim, and the jury clearly rejected Doe's testimony regarding digital penetration. On this record it is reasonably probable that the jury would have convicted defendant of sexual battery-a genital touching short of penetration without the intent to commit a forcible sexual penetration-rather than an assault that required the specific intent to commit forcible sexual penetration but did not require an actual touching.

It is also reasonably probable that a sexual battery conviction would have been a more favorable result than defendant's assault conviction. Defendant would have had a greater likelihood of receiving probation for a sexual battery conviction because, unlike assault with intent to commit forcible sexual penetration, sexual battery is not subject to limitations on probation eligibility for enumerated sex offenses. (§ 1203.065, subds. (a), (b)(1).) Finding prejudicial error under *Watson*, we will reverse defendant's conviction based on instructional error. We need not address defendant's claims of evidentiary error and ineffective assistance of counsel.

### III. DISPOSITION

The judgment is reversed.

17

_____

Grover, J.

**WE CONCUR:**


_____

Rushing, P.J.


_____

Márquez, J.


*People v Ortega*
**H038220**

| Trial Court: | Santa Clara County Superior Court, Case No.: C1108629 |
|---|---|
| Trial Judge: | Hon. Jacqueline M. Arroyo |
| Attorneys for Plaintiff/Respondent: The People | Kamala D. Harris<br>  Attorney General of California<br><br>René A. Chacón<br>  Supervising Deputy Attorney General |
| Attorneys for Defendant/Appellant: Andrew Ortega | Rudolph G. Kraft<br>  Attorney at Law |

*People v. Ortega*
H038220