Filed 10/28/20  P. v. Sandoval CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>BERNARDINO BARRERA SANDOVAL,<br><br>    Defendant and Appellant. | G058228<br><br>(Super. Ct. No. 18CF1705)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Maria D. Hernandez, Judge.  Affirmed.

Jennifer A. Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Arlene A. Sevidal, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant Bernardo Barrera Sandoval of three counts of lewd conduct on a child under 14 years of age (Pen. Code, § 288, subd. (a); all undesignated statutory references are to the Penal Code) and one count of oral copulation with a child 10 years old or younger (§ 288.7, subd. (b)). The court sentenced Sandoval to 15 years to life on the conviction for oral copulation  The court imposed concurrent six-year terms on the remaining counts.

Sandoval contends on appeal that the trial court erred in failing to instruct the jury on misdemeanor sexual battery (§ 243.4, subd. (e)(1)) as a lesser included offense of oral copulation on a child 10 years old or younger and that the 15 years to life sentence is cruel and unusual under the federal and state Constitutions. We affirm.

**FACTS**

N.G. was 16 years old at the time of trial. When she was eight to 10 years old, she lived in a two-bedroom apartment in Santa Ana with her mother, father, sister, and two brothers. They all shared one of the bedrooms. Sandoval and his wife, lived in the other bedroom. Sandoval was the godfather of N.G.'s sister. Around the same time, Gerrardo Benitez, godfather to one of N.G.'s brothers, rented the living room.

The first incident N.G. recalls Sandoval touching her occurred in the kitchen. Sandoval snuck up behind her, put his hands under her clothing, and touched her breasts and vagina. N.G. said his finger did not enter her, but it penetrated the "outside part" of her vagina. She said it happened two or three times.

N.G. said Sandoval would also have her sit on his lap and he would touch her breasts. On the occasions when Sandoval touched her breasts, he sometimes did it over her clothing and on other times under her clothing. These incidents occurred in N.G.'s home. The others who lived there were either at work or in another room at the time, although there were times when Sandoval and N.G. were alone in the apartment.

2

Once, on her birthday, Sandoval gave her chocolate and in so doing, touched her hand "weird" and looked at her "weird." She said Sandoval touched her "butt" during that incident.

N.G. stated one incident is clearer in her memory than others. She went to the market with Sandoval in his car. While they were returning to the apartment after going to the market, Sandoval parked the car, put the windows up, unbuckled his pants, and made N.G. touch his penis and told her to make her hand go up and down. Sandoval grabbed N.G.'s face and kissed her multiple times on her mouth. He also touched her legs. N.G. did not tell anyone when they got back to the apartment because she was embarrassed and afraid.

N.G. said her memory is kind of "spotty." It appears that is because she was also being molested on a daily basis by Benitez, who in addition to molesting her, had sexual intercourse with her. N.G. said she never had sexual intercourse with Sandoval. She initially told an officer that Sandoval had sexual intercourse with her, but she had confused Sandoval with Benitez. Despite the difficulty in keeping track of which man did what to her, N.G. was sure it was Sandoval, and not Benitez, who touched her "butt" on her birthday, molested her in his car after going to the market, and molested her while having her sit on his lap. N.G. said Sandoval never touched N.G. after he and his wife moved out of the apartment, but Benitez continued to live in the apartment.

She testified to Benitez pulling her to him, his touching her vagina, breasts, and forcing her to touch him. Benitez digitally penetrated her, as well. He also made her lie on the couch under a blanket with him. She had sexual intercourse with Benitez on the couch. Ultimately, one of N.G.'s brothers saw Benitez molesting N.G.'s sister and told his parents. When N.G.'s parents found out what Benitez had been doing, N.G.'s father beat up Benitez and they had him leave the apartment. Without going into detail, N.G. told her parents what Benitez had done to her, but she did not mention Sandoval. Neither did she tell them about having sexual intercourse.

Eventually, the family started family counseling and later, N.G. began one-on-one therapy. She told her therapist about having been molested by Benitez and Sandoval. It was the first time she told anyone about Sandoval. After that session and while N.G. was with her mother and the therapist, it was decided to report the matters to the police. That night her parents called the police.

When the officers responded, they focused on Benitez. They returned the next day and asked questions about Sandoval. In March 2014, a social worker spoke with the family about possible sexual abuse by Benitez. N.G.'s mother told the social worker Benitez had been kicked out of the residence after he was seen touching N.G's sister. N.G. told the police she had sexual intercourse with Sandoval, but that was not true. She had been confused. She never had sexual intercourse with Sandoval. She later told another officer she only had sexual intercourse with Benitez.

On June 7, 2018, police conducted a cold call from N.G. to Sandoval. Sandoval denied molesting N.G. When N.G. said she was calling to talk about "the touching," Sandoval said he did not know what she was talking about. Toward the end of the call, Sandoval said, "If I offended you one day, well, forgive me."

A second call was made. This time Sandoval was more specific and denied the stated events occurred. He never admitted any molestation during the phone calls.

Sandoval was arrested on June 14, 2018. During his subsequent interrogation, he admitted touching N.G.'s breasts and vagina. He said he would "stroke" her vagina, but never inserted his finger. Sandoval was asked about the incident in the car and he admitted he made her touch his penis, but he added that she was "curious."

The police also investigated Benitez. Another cold call by N.G. was arranged. Benitez was subsequently arrested and interrogated. During his interrogation, Benitez admitted molesting N.G. and her sister. He specifically admitted touching N.G.'s breasts and vagina skin-on-skin, digitally penetrating her vagina, and to possibly having

4

sexual intercourse with her.  He admitted touching N.G.'s sister's breasts and vagina, making her touch his penis, and to penetrating her with his finger and his penis.

## DISCUSSION

1. *Lesser Included Offense*

Sandoval argues his conviction for violation of section 288.7, subdivision (b) (sexual penetration of a child 10 years old or younger) must be set aside because the trial court failed to instruct the jury on misdemeanor sexual battery (§ 243.4, subd. (e)(1)) as a lesser included offense.  No error occurred because misdemeanor sexual battery is not a lesser included offense of sexual penetration of a child 10 years old or younger.  Furthermore, even if the trial court had been required to instruct on sexual battery as a lesser included offense, any error would have been harmless.

Trial courts have a sua sponte duty to ""'"instruct on the general principles of law relevant to the issues raised by the evidence.  [Citations.]  The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." [Citation.]'" (*People v. Breverman* (1998) 19 Cal.4th 142, 149.)  This includes the duty to instruct "'on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged.  [Citations.]'" (*Ibid.*)  The duty to instruct on lesser necessarily included offenses "'is based in the defendant's constitutional right to have the jury determine every material issue presented by the evidence.  [Citations.]' [Citation.]" (*People v. Lopez* (1998) 19 Cal.4th 282, 288.)

In this state, "a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser.  [Citations.]" (*People v. Birks* (1998) 19 Cal.4th 108, 117-118.)  Lesser related offenses "share[] some common

5

elements with the greater offense, . . . but if it has one or more elements that are not elements of the greater offense as alleged, then it is a lesser related offense, not a necessarily included offense." (*People v. Hicks* (2017) 4 Cal.5th 203, 209.) A defendant has no right to have the jury instructed on a lesser related offense absent an agreement by both parties. (*People v. Jennings* (2010) 50 Cal.4th 616, 668.) We review independently whether a trial court erred in instructing a jury. (*People v. Olivas* (2016) 248 Cal.App.4th 758, 772.)

Sandoval was charged in count 3 of the information with violating section 288.7, subdivision (b). "Any person 18 years of age or older who engages in oral copulation or sexual penetration, as defined in Section 289, with a child who is 10 years of age or younger is guilty of a felony and shall be punished by imprisonment in the state prison for a term of 15 years to life." (§ 288.7, subd. (b).) Section 289, subdivision (k)(1) defines "sexual penetration" as "the act of causing the penetration, however slight, of the genital or anal opening of any person or causing another person to so penetrate the defendant's or another person's genital or anal opening for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object." To prove the crime of sexual penetration, the prosecution must prove: (1) the defendant is 18 years of age or older; (2) the minor victim is 10 years of age or younger; (3) the defendant commits an act of sexual penetration of the minor; (4) the penetration was accomplished by means of a foreign object, substance, instrument, device or unknown object (including a body part other than a sexual organ); and (5) the act was committed for the purpose and specific intent of sexual gratification, arousal or abuse. (§§ 288.7, subd. (b), 289, subd. (k)(1).)

### A. Elements Test

In California, two tests are used to determine whether an uncharged offense is necessarily included within a charged offense. "Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser

6

offense, the latter is necessarily included in the former." (*People v. Reed* (2006) 38 Cal.4th 1224, 1227.)

"Any person who touches an intimate part of another person, if the touching is *against the will of the person touched*, and is for the specific purpose of sexual arousal, sexual gratification, or sexual abuse, is guilty of misdemeanor sexual battery[.]" (§ 243.4, subd. (e)(1), italics added.) This offense requires the act be committed against the will of the victim. Section 288.7, on the other hand does not require the act to be against the will of the child.

"The elements test is satisfied when "'all the legal ingredients of the corpus delicti of the lesser offense [are] included in the elements of the greater offense." [Citation.]' [Citations.] Stated differently, if a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former. [Citations.]" (*People v. Lopez, supra*, 19 Cal.4th at p. 288.)

Section 288.7 was enacted as part of the Sexual Offender Punishment, Control, and Containment Act of 2006 (the Act). (*People v. Baker* (2018) 20 Cal.App.5th 711, 731 (*Baker*).) This section is designed to protect children 10 years and younger from child abuse. Consequently, consent (or lack thereof) is not an issue in a prosecution for a violation of sexual penetration. In a prosecution for violation of section 288.7, the consent of the minor is "irrelevant." (*People v. Hillhouse* (2003) 109 Cal.App.4th 1612, 1621.)

If a defendant attempted to prove the sexual penetration of a child 10 years old or younger was consented to by the child, the evidence would properly be excluded because it is irrelevant to a determination of the charge. (See Evid. Code, § 210 [evidence is relevant only if it has a "tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action"].) Because consent, or the lack thereof, is irrelevant in a prosecution for sexual penetration and sexual battery requires affirmative proof of the lack of consent on the victim's part,

7

sexual battery is not a lesser included offense of sexual penetration under the elements test.

Additionally, the court in *People v. Ortega* (2015) 240 Cal.App.4th 956, 967 (*Ortega*), concluded sexual battery is not a lesser included offense of forcible sexual penetration (§ 289, subd. (a)(1)(A)) under the elements test because the sexual penetration statute may be committed by means other than the defendant using a part of his body to penetrate the child, and the sexual battery statute does not apply when the foreign object used to penetrate the victim is not a part of the defendant's body. (*Ortega,* at p. 967.)

### B. Accusatory Pleading Test

Under the accusatory pleading test, "a lesser offense is included within the greater charged offense "'if the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed.""" (*People v. Lopez, supra*, 19 Cal.4th at p. 288.)

In *People v. Marshall* (1957) 48 Cal.2d 394 (*Marshall*), the defendant was charged with robbery. The information alleged the robbery occurred when the defendant forcibly took $70 and an automobile from Jack Martens. (*Id*. at p. 396.) The defendant waived jury trial and the court found him guilty of vehicle theft as a lesser included offense. (*Ibid*.) The defendant argued on appeal that auto theft is not a necessarily included lesser offense of robbery. (*Id*. at p. 397.)

Robbery involves "'the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.'" (*Marshall, supra*, 48 Cal.2d at p. 397.) The vehicle theft statute the trial court convicted the defendant of committing, made it a crime for "'[a]ny person who drives or takes a vehicle not his own, without the consent of the owner thereof, and with the intent to either permanently or temporarily deprive the owner thereof of his title to or possession of such vehicle, whether with or without the intent to

8

steal the same . . . ." (*Ibid*.) Our Supreme Court held the offense of robbery does not include all the elements of vehicle theft and as a result, a defendant who is charged in an accusatory pleading with robbery in the statutory language, is not charged with and cannot be convicted of auto theft as a lesser included offense. (*Id*. at p. 399.) However, the court went on to conclude that the information specifically charged the defendant with stealing "'an automobile'" and thus, the information alleged the automobile was taken by means of robbery. (*Id*. at pp. 399-400.)

The issue in *Marshall* was "whether the yardstick for measuring offenses 'necessarily included' in a charge within the meaning of section 1159[1] . . . is the specific language of the accusatory pleading or whether such yardstick is the language of the statute defining the offense charged[.]" (*Marshall, supra*, 48 Cal.2d at p. 401.) Based on considerations of fairness to both parties, it held "the specific language of the accusatory pleading" must be considered in determining whether a lesser offense is necessarily included in the charged offense. (*Id*. at p. 405.) "Because the information charged defendant with taking 'an automobile,' he was put on notice that he should be prepared to defend against a showing that he took that particular kind of personal property. Because the information charged that the automobile was taken by robbery, defendant was put on notice that he should be prepared to defend against evidence showing the elements of that crime." (*Ibid*.)

Count 3 of the information charged Sandoval with sexual penetration of a child 10 years old or younger (§ 288.7, subd. (b)) in the language of the statute. Pursuant to the decision in *Marshall*, when the accusatory pleading charges a defendant with an offense in the same language as the statute, there is no difference between the elements

---

[1] "The jury, or the judge if a jury trial is waived, may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense." (§ 1159.)

test and the accusatory pleading test. If a lesser offense is not necessarily included under the elements test, it will not be necessarily included under the accusatory pleading test.

The accusatory pleading test was expanded by the appellate court in *Ortega, supra*, 240 Cal.App.4th 956. Unlike the present case, where Sandoval was charged with sexual penetration under section 288.7, subdivision (b), the defendant in *Ortega* was charged with *forcible* sexual penetration in violation of section 298, subdivision (a)(1)(A). (*Ortega,* at p. 960.) The jury found the defendant guilty and he appealed contending the trial court prejudicially erred in failing to instruct the jury on sexual battery as a lesser included offense. (*Id*. at pp. 960, 963.) The *Ortega* court first concluded sexual battery is not a necessarily included lesser offense of forcible sexual penetration under the elements test. (*Id*. at p. 967.) That decision was based on the fact that the crime of sexual penetration can be committed by use of a foreign object, whereas sexual battery requires skin-on-skin contact. (*Ibid*.) "Because the forcible sexual penetration statute encompasses different types of contact than the sexual battery statute, it is possible to commit the greater without committing the lesser (e.g., where penetration is accomplished by means other than a part of the perpetrator's body.) Sexual battery is therefore not a lesser included offense of forcible sexual penetration under the statutory elements test." (*Ibid.*)

The *Ortega* court then turned to the accusatory pleading test. (*Ortega, supra*, 240 Cal.App.4th at p. 967.) Using the same fairness concerns voiced by the California Supreme Court in *Marshall, supra*, 48 Cal.2d at page 405, the appellate court concluded the evidence from the preliminary examination must be included in deciding whether a lesser offense is necessarily included in the charged offense. (*Ortega,* at pp. 967-969.) It found the transcript of the preliminary hearing "is integral to the accusatory procedure because, consistent with a defendant's due process right to notice, a defendant cannot be prosecuted for an offense not shown in the preliminary hearing to have been committed. [Citations.]" (*Id*. at p. 969.)

10

In *Ortega*, the evidence at the preliminary examination showed the defendant penetrated the victim with his finger. The court reasoned that had the information stated the offense was committed by the defendant using his finger, the information would have contained all the elements of sexual battery and that offense would have been a necessarily included offense of the charged forcible sexual penetration. (*Ortega, supra*, 240 Cal.App.4th at p. 968.) The court, however, stated the accusatory pleading cannot be viewed in isolation and that the evidence from the preliminary hearing must be considered in determining what lesser offense is necessarily included in the charged offense of forcible sexual penetration. (*Ibid.*)

Sandoval argues the evidence at the preliminary examination demonstrates the sexual penetration in the present case involved his use of his finger, not any foreign object other than a body part, and therefore sexual battery is a necessarily lesser included offense of the sexual penetration charged in this matter. Even were we to use the expanded accusatory pleading test as set forth in *Ortega*, that would not aid Sandoval.[2] While the evidence from the preliminary hearing may have demonstrated Sandoval used his finger to penetrate N.G., it did not establish force or that the touching was against her will. This is not to say N.G. consented, but rather that the issue of consent was not raised at the hearing. Therefore, even using an expanded accusatory pleading test, sexual battery—which requires an act against the will of the victim—is not a lesser included offense of sexual penetration, which does not contain a lack of consent requirement.

Moreover, were we to consider sexual battery a lesser necessarily included offense of sexual penetration—and we do not—any error in failing to instruct the jury on

___

[2] We note our Supreme Court has held that in using the accusatory pleading test "we consider *only* the pleading for the greater offense" (*People v. Montoya* (2004) 33 Cal.4th 1031, 1036), and in *People v. Munoz* (2019) 31 Cal.App.5th 143, 158, Division One of the Second District declined to follow *Ortega*, as inconsistent with the decision in *Montoya*. So did Division One of the First District in *People v. Macias* (2018) 26 Cal.App.5th 957, 964.

sexual battery as a lesser included offense would be harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)[3]  The jury was instructed on three lesser included offenses of sexual penetration.  The court instructed on attempted sexual penetration, assault and battery.  If the jury found he did *not* penetrate N.G., it had three possible lesser offenses to choose from.  It could have convicted Sandoval of attempted sexual penetration if it believed he attempted to penetrate her, or it could have convicted him of battery or assault if it concluded he did not attempt to sexually penetrate her, but still touched her in a harmful or offensive manner or willfully did an act that probably would have resulted in the application of force to N.G.

2. *Cruel or Unusual Punishment*

Section 288.7, subdivision (b), mandates a sentence of 15 years to life in state prison for a violation of its provisions.  At his sentencing hearing, Sandoval's attorney did not object to the imposition of the 15 years to life prison commitment.  Indeed, counsel asked the court to sentence Sandoval to the 15 years to life required by subdivision (b) of section 288.7, and to then impose concurrent sentences on the remaining counts.  The trial court sentenced Sandoval to state prison for 15 years to life, as required by section 288.7, subdivision (b).  Sandoval contends on appeal that sentence constitutes cruel and/or unusual punishment in violation of the federal and California Constitutions.

The argument is forfeited because it was not raised in the trial court. (*People v. Gamache* (2010) 48 Cal.4th 347, 403; *Baker, supra*, 20 Cal.App.5th at p. 720; *People v. Speight* (2014) 227 Cal.App.4th 1229, 1248; *People v. Norman* (2003) 109

---

[3]  Although Sandoval argues the reversible error standard requires proof beyond a reasonable doubt the error did not contribute to the verdict, citing *Chapman v. California* (1967) 386 U.S. 18, 24, the California Supreme Court has rejected that standard.  "[T]he failure to instruct sua sponte on a lesser included offense in a noncapital case is, at most, an error of California law alone, and is thus subject only to state standards of reversibility."  (*People v. Breverman, supra*, 19 Cal.4th at p. 165.)

12

Cal.App.4th 221, 229; *People v. DeJesus* (1995) 38 Cal.App.4th 1, 27.) Not only was the issue not raised below, defense counsel's request that Sandoval be sentenced 15 years to life for the sexual penetration, with concurrent sentences on the other three counts invited the court's action and Sandoval is estopped from raising it on appeal. (*People v. Brownlee* (1977) 74 Cal.App.3d 921, 932.) We nevertheless will address the issue to forestall the inevitable ineffective assistance of counsel claim.

The United States Constitution prohibits imposition of "cruel and unusual punishments" (U.S. Const., 8th Amend.) and is made applicable to the states through the due process clause of the Fourteenth Amendment. (*Robinson v. State of California* (1962) 370 U.S. 660, 666-667.) The California Constitution prohibits the imposition of "cruel or unusual punishment." (Cal. Const., art. I, § 17.) The difference in wording between the federal and state prohibitions is a distinction that is purposeful and substantive. (*People v. Anderson* (1972) 6 Cal.3d 628, 634-637, 645.) Accordingly, the state provision is construed separately from the federal provision. (*Raven v. Deukmejian* (1990) 52 Cal.3d 336, 335.) We independently review questions of the constitutionality of a given sentence (*Baker, supra*, 20 Cal. App.5th at p. 720), "but the underlying disputed facts must be viewed in the light most favorable to the judgment." (*People v. Martinez* (1999) 76 Cal.App.4th 489, 496.)

*A. The Federal Constitution*

The Eighth Amendment's prohibition on cruel and unusual punishment "contains a 'narrow proportionality principle' that 'applies to noncapital sentences.' [Citation.]" (*Ewing v. California* (2003) 538 U.S. 11, 20.) A sentence violates the Eighth Amendment if it is grossly disproportionate to the crime. (*Lockyer v. Andrade* (2003) 538 U.S. 63, 72.) The high court noted those instances will, however, be "'exceedingly rare'" and occur only in "'extreme'" cases. (*Id.* at p. 73.) This is not such a case.

13

To the extent Sandoval makes a facial challenge to the sentence required by section 288.7, subdivision (b), that argument lacks merit. In *In re Rodriguez* (1975) 14 Cal.3d 639, 642-643, the defendant was sentenced to one year to life for his single act of committing a lewd act on a child in violation of section 288 under the old "Indeterminate Sentence Law." After serving 22 years of the sentence, the defendant brought a petition for a writ of habeas corpus challenging the sentence as a violation of the Eighth Amendment and article I, section 17 of the California Constitution. (*Id.* at p. 642.)

Rejecting his claim, the court noted section 288 "encompasses offenses reflecting a wide range of culpability, including situations in which the life maximum may be a constitutionally permissible punishment[.]" (*Id.* at p. 648.) The same holds true for those who sexually penetrate a child 10 years old or younger. The sentence imposed in this instance is not facially unconstitutional. To the extent Sandoval seeks consideration of "the circumstances of the case," he raises an as applied challenge to his sentence. (*Baker, supra*, 20 Cal.App.5th at p. 722.)

"Section 288.7 was enacted as part of [the Act]. The primary purpose of the Act was to prevent 'future victimization' of the community by sex offenders. [Citation.] Among the provisions of the Act was the creation of several new criminal offenses involving child victims." (*People v. Cornett* (2012) 53 Cal.4th 1261, 1267.) Besides adding section 288.7 to the Penal Code, the Act increased the penalties for other crimes against children. (*Cornett,* at p. 267.) Children 10 years old and younger are particularly vulnerable. Additionally, "some observers consider child molesters, in general, to be more dangerous, harder to rehabilitate, [and] less able to understand . . . their problems[.]" (*In re Wells* (1975) 46 Cal.App.3d 592, 598.) This appears to be why "great deference is ordinarily paid to legislation designed to protect children, who all too frequently are helpless victims of sexual offenses." (*Id.* at p. 599.)

"The concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of

14

justice that punishment for crime should be graduated and proportioned to [the] offense.' [Citation.]" (*Graham v. Florida* (2010) 560 U.S. 48, 59.)

We begin by considering "all of the circumstances of the case to determine whether the sentence is unconstitutionally excessive." (*Graham v. Florida, supra*, 560 U.S. at p. 59.) In doing so, we compare the gravity of the offense and the severity of the sentence. (*Id*. at p. 60.) It is only where the court finds an "'inference of gross disproportionality'" that the court then compares "the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. [Citation.]" (*Ibid*.) We do not find an inference of gross disproportionality here.

As noted above, children are particularly vulnerable victims of sexual assault. They must live with the effects of such an assault longer than an adult victim would. While a sexual assault is difficult for an adult victim to deal with, children lack the coping skins we learn as we mature. A sexual assault on a child, even a nonviolent assault, may cause life-long devastation to the child. (See *Baker, supra*, 20 Cal.App.5th at p. 725.) In the present case, for example, N.G. says Sandoval's actions "ruined my life." Sandoval's actions caused her trauma. Because she was a young child when this happened, she thought she must have done something to cause her to be the subject of this miscreant behavior. While she once thought her future was bright, Sandoval's action made her feel as if "life isn't worth living." She wanted to die. He stole her innocence. N.G. does not believe she will ever be happy again because of Sandoval. She said she feels as if she is in prison every day. Because of what he did to her, N.G. said she has nothing in common with her friends and Sandoval's actions affected her relationship with her family. She said she cannot even hug her family without getting a flashback of the molestations. Sandoval's acts have adversely affected her school performance as well. Sometimes she could not bring herself to get out of bed to go to school. When she did go, she would ditch class to go to the restroom to cry. It got to the point where her

15

mother had to quit her job to make sure N.G. got to school, and to take her to therapy. N.G. does not want Sandoval to ever do that to another young girl.

In committing his offenses, Sandoval took advantage of a possession of trust. (Cal. Rules of Court, rule 4.421(a)(11).) He was the godfather of N.G.'s sister and lived in the same residence as N.G. and her family. Due to the commitment on count 3, the court imposed concurrent sentences on Sandoval's other three convictions, rather than impose consecutive sentences on the other sex offenses. (See Cal. Rules of Court, rule 4.421(a)(7).)

Weighed against the harm the statute is intended to prevent and the damage Sandoval's conduct did to N.G., we find no inference of "gross disproportionality," notwithstanding the fact that his STATIC-99 test results indicate he poses a below average risk of reoffending and he was a 49-year-old man at the time of sentencing with no prior criminal record.

### B. *The State Constitution*

A sentence under the California constitutional provision prohibiting cruel or unusual sentences violates the Constitution when "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424 (*Lynch*).) Courts do not interfere with the sentence prescribed by the Legislature unless the sentence so prescribed is "'all out of proportion to the offense.'" (*Id.* at p. 424.)

Pursuant to the *Lynch* decision, there are three approaches to determine whether a sentence is disproportionate as to constitute cruel or unusual punishment. (*Lynch, supra*, 8 Cal.3d at pp. 425-428.) The first involves consideration of the offense and the offender. (*Id*. at p. 425.) Under this test, we consider the totality of circumstances surrounding the commission of the offense at bar. (*Id.* at p. 479.) Sexually penetrating a child 10 years old or younger is not a minor offense. This offense is a grave danger to society. The performance of such an act can destroy lives from a

16

very young age.  (See *People v. Christensen* (2014) 229 Cal.App.4th 781, 806 [molestation "may have lifelong consequences to the well-being of the child"].)  As a man in his 40's, he used his position as a trusted adult family member to impose himself upon a child.  And he did so in her house, where, of all the places in the world, she should have felt safe.  At Sandoval's sentencing, more than six years *after* he committed his offense(s) against her, N.G. said she does not think she will ever be happy again.  The emotional damage N.G. suffered and continues to suffer because of Sandoval is substantial to say the least.

Sandoval's lack of a criminal record is favorable to him, but it is substantially outweighed by the above facts.  (*People v. Szadziewicz* (2008) 161 Cal.App.4th 823, 845.)  Given Sandoval's conduct and his crime, a sentence of 15 years to life does not "shock[] the conscience and offend[] fundamental notions of human dignity."  (*Lynch*, *supra*, 8 Cal.3d at p. 424.)

The next test is to compare the "punishments prescribed by the *same jurisdiction* for *different offenses*, which, by the same test, must be deemed more serious."  (*Lynch, supra*, 8 Cal.3d at p. 426.)  Second degree murder, like sexual penetration of a 10-year- old child or younger, is punishable by a term of 15 years to life in prison.  (§ 190, subd. (a).)  Other offenses punishable by 15 years to life in this state include human trafficking when committed through "force, fear, fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury to the victim or to another person" (§ 236.1, subd. (c)(2)) and a lewd act on a child (§ 288, subd. (a)) with two prior convictions of certain sex offenses (§ 667.51, subd. (c)).

In analyzing this factor, it must be remembered that "'[p]unishment is not cruel or unusual merely because the Legislature may have chosen to permit a lesser punishment for another crime.  Leniency as to one charge does not transform a reasonable punishment into one that is cruel or unusual.' [Citation.]"  (*Baker, supra*, 20 Cal.App.5th at p. 727.)  Although molestation of a child under 14 years of age is not

punished as severely as sexual penetration, the sentencing schemes for sex offenses against children "reflect the Legislature's intent to increase the severity of punishment" the younger the victims. (*Id*. at p. 728.) That is not an unconstitutional policy.

As the *Baker* court observed: "In passing [the Act], the Legislature sought to make it easier to sentence a defendant to a life term for particularly heinous sexual contact with a young child." (*Baker, supra*, 20 Cal.App.5th at p. 729.) "Although a life sentence was possible under the One Strike law if certain factors were present, section 288.7 sought to broaden that net." (*Ibid*.) Comparing Sandoval's sentence "to the punishments for similar and more serious sex offenses in California does not suggest this is that 'rarest of cases' in which 'the length of a sentence mandated by the Legislature is unconstitutionally excessive.'" (*Id.* at p. 730.)

The third test is to compare the defendant's punishment with the punishment for the "same offense" in sister states. (*Lynch, supra,* 8 Cal.3d at p. 436.) Sandoval cites two statutes for comparison, one from Oregon and one from New York. He points out that in New York, oral copulation with a child under the age of 11 is punishable by five to 25 years in prison (see N.Y. Pen. Code, §§ 70.02, subd. (3)(a) & 130.75, subd. (1)(a)), and in Oregon, the maximum sentence for Sandoval's act would be a maximum of 25 years (see Or. Rev. Stat., §§ 161.605, 163.305, subd. (1), 163.405 [oral or anal sexual intercourse of victim under 12 years of age]).

The Oregon statute appears to punish similar contact as section 288.7, but it does not limit its application to children 10 years old or younger. It also applies when the victim is 11 years old. It therefore does not technically prescribe punishment for the "same offense" (10 year old victim or younger) as section 288.7.

Although the New York prescribes 25 years in prison for the same conduct for which Sandoval was sentenced and California requires a penalty of 15 years to life, this does not mean the penalty provision of section 288.7, subdivision (b) constitutes cruel or unusual punishment under our constitution. Because one sentenced pursuant to

18

section 288.7, subdivision (b), may be paroled at his or her first parole date, that individual would serve *less* than 25 years in prison, as would be required by the New York statute.  Of course, eligibility for parole does not mean an inmate will be, in the eyes of the parole board, deemed a fit candidate and granted parole at that time.  One sentenced under section 228.7, subdivision (b) may spend his or her remaining time in prison.

But even viewing section 288.7, subdivision (b) as being a much harsher sentence than that provided in New York, that fact by itself does not require a finding the present sentence violates article I, section 17 of the California Constitution.  Our constitution "does not require 'conforming our Penal Code to the "majority rule" or the least common denominator of penalties nationwide.'  [Citation.]  Otherwise, California could never take the toughest stance against repeat offenders or any other type of criminal conduct." (*People v. Martinez* (1999) 71 Cal.App.4th 1502, 1516.)  In addition, the law does not require perfect symmetry between offenses and their respective punishment.

In rejecting a constitutional challenge to the sentence in *People v. Baker*, *supra*, 20 Cal.App.5th 711, 731, the appellate court "found 10 similar statutes in other states. (See Fla. Stat. Ann. §§ 800.04(5)(b), 775.082(3)(a)4 [life or 25-year minimum for lewd act on child under 12]; Kan. Stat. Ann. §§ 21-5506(b)(3)(A), 21-6627(a)(1)(C) [25 years to life for fondling or touching of a child under 14]; Nev. Rev. Stat. Ann. §§ 201.230.2 [10 years to life for a lewd act on a child under 14], 200.366.1(b) & 3 [35 years to life for sexual penetration of a child under 14 if no substantial bodily harm; else, life without parole]; Ariz. Rev. Stat. §§ 13-705.A [life sentence for dangerous crimes against children including sexual conduct with a child under 12]; Mich. Comp. Laws Serv. § 750.520b(1)(a) & (2)(b) [25 years to life for sexual penetration of a child under 13]; Miss. Code Ann. §§ 97-3-101(3), 97-3-95(1)(d) [20 years to life for sexual penetration of a child under 14]; Neb. Rev. Stat. Ann. § 28-319.01(1)(a) & (2) [15-year minimum for sexual penetration of a child under 12]; R.I. Gen. Laws §§ 11-37-8.1, 11-37-8.2 [25 years

19

to life for sexual penetration of a child under 14]; S.C. Code Ann. §§ 16-3-651(h), 16-3-655(A)(1), (D)(1) [25 years to life for oral copulation of a child under 11]; Utah Code Ann. § 76-5-403.1(1) & (2)(a) [25 years to life for oral copulation of a child under the age of 14].)" (*Baker, supra*, 20 Cal.App.5th at p. 731.)  Thus, while section 288.7 prescribes a severe sentence for a violation, the mandatory sentence is not so disproportionate to the punishment imposed in other states to render Sandoval's sentence constitutionally suspect.

After reviewing *Lynch*'s three tests, we conclude the sentence is not so disproportionate that it shocks the conscience or offends fundamental notions of human dignity.  (*Lynch, supra*, 8 Cal.3d at p. 424.)

## DISPOSITION

The judgment is affirmed.

THOMPSON, J.

WE CONCUR:

MOORE, ACTING P. J.

ARONSON, J

20