Filed 2/25/25  P. v. Ayalaflores CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSUE AYALAFLORES,<br><br>    Defendant and Appellant. | D084307<br><br><br>(Super. Ct. Nos. RIF2003375,<br>RIF2204299) |

APPEAL from a judgment of the Superior Court of Riverside County, Joshlyn R. Pulliam, Judge.  Affirmed.

Jennifer A. Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Melissa Mandel, Deputy Attorneys General, for Plaintiff and Respondent.

Over three months, Josue Ayalaflores had two accidents related to reckless or drunk driving, and his license was suspended as a result. Two months later, Ayalaflores again drove under the influence and had an

accident, this time killing two pregnant women in the other car along with their fetuses. A jury convicted Ayalaflores of 12 offenses—including four counts of murder—arising from the three incidents.

Ayalaflores contends (1) the trial court's failure to instruct the jury on gross vehicular manslaughter while intoxicated and gross vehicular manslaughter as lesser included offenses of murder violated his constitutional rights, (2) the trial court's denial of his motion to sever the charges arising from the earlier collisions from those arising from the fatal collision resulted in gross unfairness and denied him due process, and (3) the trial court abused its discretion in admitting the portion of a 911 call where a witness described Ayalaflores' profane gesture and statement made minutes before the fatal collision.

We disagree with each contention. First, the court was not required to instruct the jury on gross vehicular manslaughter while intoxicated or gross vehicular manslaughter as neither is a lesser included offense of murder. We further decline to adopt the expanded accusatory pleading test Ayalaflores advocates. Second, the court did not abuse its discretion in denying the motion to sever because the evidence was cross-admissible and its admission did not result in gross unfairness. Third, the court properly exercised its discretion to admit the entire 911 call. We therefore affirm the judgment.

I.

A.

In April 2020, witnesses saw Ayalaflores speed along the right shoulder emergency lane past a line of cars stopped at a red light, almost striking other cars. He entered the intersection just as the light turned green and veered left. Ayalaflores lost control of his car and crashed onto the raised center island, injuring himself. A witness called 911.

2

A responding officer determined the cause of the collision was an unsafe turning movement, with speed as a contributing factor. The officer cited Ayalaflores for reckless driving, telling him, "That's how you end up killing somebody."

B.

On July 11, 2020, a witness called 911 to report a car weaving in and out of traffic at high speeds. Moments later, the car collided in an intersection with the passenger side of a truck. The collision damaged both vehicles and caused the truck's pregnant passenger to go into preterm labor.

Ayalaflores' eyes were bloodshot and watery, his speech was slurred, and his breath smelled of alcohol. Ayalaflores admitted to a responding officer he had been drinking.

A horizontal gaze nystagmus test indicated Ayalaflores was intoxicated. Ayalaflores' breath sample for a preliminary alcohol screening was 0.21 at 7:01 p.m. at the scene. Based on these findings and Ayalaflores' appearance, the officer arrested Ayalaflores.

Ayalaflores requested a blood alcohol test, and the blood alcohol content of the sample taken at the hospital about an hour after the accident was 0.185 percent, more than twice the legal limit. Based on average rates of elimination of alcohol from the bloodstream, a toxicologist opined Ayalaflores' blood alcohol content was between 0.197 and 0.210 when the accident occurred—a level consistent with a male of Ayalaflores' size having at least six and a half standard drinks. In the toxicologist's opinion, a person with blood alcohol levels within this range could not safely operate a vehicle.

The arresting officer cited Ayalaflores for driving under the influence. The officer served him with notice his license would be suspended within 30 days.

3

Ayalaflores had been driving the car with his girlfriend and her two children as passengers. After the accident, Ayalaflores told his girlfriend he was sorry and he never meant to put her or the children in harm's way.

A child protective services investigator made an unannounced home visit a week later. Ayalaflores acknowledged drinking throughout the day on July 11, 2020. He said it was the worst day of his life because, "'I put my little ones in danger, I'm never going to forgive myself.'" He and his girlfriend agreed he would not drink and drive again.

C.

Two months later, on an evening in September 2020, witnesses saw Ayalaflores recklessly driving his damaged car. He drove through a stop sign, cutting off another driver in an intersection. The other driver honked, pulled over, and called 911 because she thought he would cause an accident.

Ayalaflores continued driving recklessly, swerving through traffic as he drove to the next stop sign, where he pulled to the right and got out of the car. Apparently believing witnesses in the car behind him had honked at him, he gestured at them with his middle finger. The passenger told Ayalaflores she thought he was intoxicated. Ayalaflores swore at her, got back in his car, and started following them.

Shortly after the witnesses drove through an intersection, they heard a crash. They looked back and saw a car on fire. The driver said the man who was following them crashed. The witnesses went back to the intersection and called 911.

Other witnesses saw Ayalaflores speed past vehicles stopped at the red light before he crashed into the passenger side of an SUV crossing the intersection on a green light. The impact pushed the SUV into an electrical box on the corner, and the SUV burst into flames.

Witnesses ran to help the individuals in the SUV. They got the driver and a passenger in the rear seat out. They could not get the front passenger out, and she and the entire passenger compartment became engulfed in flames. Responding deputy sheriffs told the good Samaritans to step back, as there were no further signs of life and they were concerned the gas tank might explode.

The passenger in the front seat died at the scene. The forensic pathologist determined multiple blunt force trauma and fire-related injuries caused her death. She was pregnant and her fetus, approximately 27 to 30 weeks in gestational age, died in utero due to the maternal injuries.

The passenger in the rear seat, who was also pregnant, was taken to the hospital with severe burns. Despite efforts to save her, both she and her fetus were pronounced dead at the hospital. The forensic pathologist determined this passenger also died from multiple blunt force and fire-related injuries. Her fetus, approximately 18 weeks in gestational age, died due to the maternal injuries.

An accident investigator determined Ayalaflores was "flooring" his car's accelerator to over 70 miles per hour seconds before the impact and applied the brake just 0.4 seconds before the impact. The car was traveling at 61.8 miles per hour at the time of impact. The investigator determined the cause of the accident was excessive speed on a road with a speed limit of 45 miles per hour and the failure to stop at a red light, both of which are violations of the Vehicle Code.

An unresponsive Ayalaflores was transported to the hospital. A blood sample taken from Ayalaflores at the hospital had a blood alcohol content of 0.256 percent, approximately three times the legal limit. A subsequent sample had a blood alcohol content of 0.225 percent. An average male would

5

have had a blood alcohol content between 0.245 and 0.271 at the time of the accident, which is the equivalent to having eight or nine drinks in his system.

Officers interviewed Ayalaflores the day after the accident. He admitted driving the car but said the vehicle was turning funny and the accelerator was not right. He did not remember much about the accident. He initially denied drinking alcohol, but later admitted he probably had about a pint of brandy. He said he has a high tolerance for alcohol, but admitted he was driving "semi-intoxicated." He acknowledged drinking too much but did not believe he was drunk.

D.

Ayalaflores was charged with one count of driving a vehicle upon a public highway in willful and wanton disregard for public safety (Veh. Code, § 23103, subd. (a); count 12) for the April 2020 incident.

As to the July 2020 incident, Ayalaflores was charged with one count of driving under the influence of alcohol (§ 23152(a); count 8); one count of driving with a blood alcohol content of 0.08 percent or more (§ 23152(b); count 9); and two counts of child endangerment (Pen. Code, § 273a(b); counts 10 & 11).

For the September 2020 incident, Ayalaflores was charged with four counts of murder (§ 187(a); counts 1 through 4); one count of driving under the influence causing bodily injury (Veh. Code, § 23153(a); count 5); one count of driving with a blood alcohol content of 0.08 percent or more (§ 23153(b); count 6); and one count of driving with a suspended license (§ 14601.5(a); count 7).

A jury convicted Ayalaflores as charged. He admitted a prior conviction that was both a serious prior offense (Pen. Code, § 667(a)) and strike prior

6

(§§ 667(c) & (e)(1), 1170.12(c)(1)). The court sentenced Ayalaflores to a total term of seven years plus 120 years to life in prison.

## II.

We address Ayalaflores' three challenges on appeal.

## A.

Ayalaflores first contends the court prejudicially erred when it failed to instruct the jury sua sponte on gross vehicular manslaughter and gross vehicular manslaughter while intoxicated as lesser included offenses of the murder charges. We disagree.

Prior to trial, the court stated, "The bench notes to the homicide instructions clearly state that gross vehicular manslaughter due to intoxication is not a lesser included offense. Neither is voluntary manslaughter." The court considered but denied the defense's request to give the instructions as lesser *related* offenses because the court could not do so over the prosecutor's objection. (*People v. Ng* (2022) 13 Cal.5th 448, 557.)

The court instructed the jury with the standard jury instruction for second degree murder with malice aforethought. The instruction required the jury to find Ayalaflores "committed an act that caused the death of another person or a fetus" and "[w]hen [he] acted, he had a state of mind called malice aforethought." To find implied malice, the jury was required to find Ayalaflores "intentionally committed the act; [¶] The natural and probable consequences of the act were dangerous to human life; [¶] At the time he acted, he knew his act was dangerous to human life; [¶] AND [¶] He deliberately acted with conscious disregard for human or fetal life." (CALCRIM No. 520.)

A trial court must "instruct the jury on any uncharged lesser offense that is necessarily included in a charged offense if there is substantial

7

evidence from which the jury could reasonably conclude that the defendant committed the lesser included offense but not the charged offense." (*People v. Lopez* (2020) 9 Cal.5th 254, 269.)

We independently review whether a crime is a lesser included offense of another. (*People v. Licas* (2007) 41 Cal.4th 362, 366.) To do so, "we apply either the elements test or the accusatory pleading test. Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former. Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former." (*Lopez*, 9 Cal.5th at pp. 269-270 [cleaned up].)

Ayalaflores concedes that neither gross vehicular manslaughter nor gross vehicular manslaughter while intoxicated are necessarily included within murder under the statutory elements test "because they require proof of elements that murder does not, namely, use of a vehicle and intoxication." (§§ 191.5(a) [gross vehicular manslaughter while intoxicated requires both driving vehicle and intoxication], 192(c)(1)) [vehicular manslaughter with gross negligence requires driving vehicle]).

Here, each of the four murder counts used the statutory language to charge Ayalaflores with violating section 187(a) when he "did willfully and unlawfully murder . . . , a human being." The pleading did not state that Ayalaflores caused the victims' deaths by driving a vehicle or by intoxication. Since the accusatory pleading incorporated only the statutory definition of murder without referring to particular facts or additional elements, the conventional accusatory pleading standard also does not apply. (*People v. Alvarez* (2019) 32 Cal.App.5th 781, 786.)

8

Ayalaflores contends, however, we should apply an "expanded" accusatory pleading test and consider evidence presented at the preliminary hearing to find the additional elements necessary to consider gross vehicular manslaughter while intoxicated or gross vehicular manslaughter as lesser included offenses to the murder charges. We rejected such a test in *Alvarez*, concluding the test—articulated in *People v. Ortega* (2015) 240 Cal.App.4th 956, 967—conflicts with Supreme Court precedent holding courts may *only* consider the pleading when applying the accusatory pleading test to determine whether a defendant is entitled to instruction on a lesser uncharged offense. (*Alvarez*, 32 Cal.App.5th at pp. 787-788.) A different rule would interfere with prosecutorial charging discretion. (*Id.* at pp. 788-789.) All published cases to consider *Ortega*'s expanded accusatory pleading test have similarly rejected it. (See *People v. Munoz* (2019) 31 Cal.App.5th 143, 158; *People v. Macias* (2018) 26 Cal.App.5th 957, 964.)

We continue to decline to adopt the expanded accusatory pleading test because Supreme Court precedent precludes us from doing so. The trial court properly refused to instruct the jury that gross vehicular manslaughter while intoxicated or gross vehicular manslaughter were either lesser included or lesser related offenses.

### B.

Second, Ayalaflores contends the court improperly denied his motion to sever the misdemeanor counts related to the April and July 2020 drunk and/or reckless driving incidents from the counts arising from the September 2020 incident. We disagree.

Section 954 permits an accusatory pleading to charge under separate counts two or more offenses if they are "connected together in their commission" or are "of the same class of crimes or offenses." (§ 954; *People v.*

9

*Soper* (2009) 45 Cal.4th 759, 771.) Such joinder of charges is favored because it avoids the increased expenditures of funds and judicial resources that may result from separate trials. (*People v. Simon* (2016) 1 Cal.5th 98, 122.) Joinder is thus "'the course of action preferred by the law'"; nonetheless, "a trial court has discretion to sever properly joined charges in the interest of justice and for good cause." (*Ibid*.)

Ayalaflores does not challenge the statutory basis for joinder of the charges. He must, therefore, show clear prejudice to establish the trial court abused its discretion in denying his motion to sever. "A defendant seeking severance of properly joined charged offenses must make a stronger showing of potential prejudice than would be necessary to exclude evidence of other crimes in a severed trial." (*Simon*, 1 Cal.5th at pp. 122-123.)

We review a decision denying a motion to sever in two steps. (*Simon*, 1 Cal.5th at p. 122.) In the first step, we review the order "for abuse of discretion." (*People v. Vargas* (2020) 9 Cal.5th 793, 817.) In the second step, even if we conclude that the denial of a severance motion was not an abuse of discretion when made, we consider whether the joint trial ultimately "'resulted in such gross unfairness as to amount to a due process violation.'" (*People v. Landry* (2016) 2 Cal.5th 52, 77.)

1.

In the first step, we consider four factors to determine whether the trial court abused its discretion: (1) whether evidence of the crimes to be jointly tried is cross-admissible; (2) whether the charges are especially inflammatory; (3) whether a weak case was joined to a strong one "'so that the spillover effect of aggregate evidence might alter the outcome of some or all of the charges'"; and (4) whether joinder renders a noncapital case a

capital case. (*Vargas*, 9 Cal.5th at p. 817.) We examine only the first three factors in this noncapital case.

a.

"If the evidence of any of the charged offenses would be "'cross-admissible'" in hypothetical separate trials of any of the other charges, that is enough 'standing alone, to dispel any prejudice and justify a trial court's refusal to sever the charged offenses.'" (*Vargas*, 9 Cal.5th at p. 817.) Complete or "two-way cross-admissibility is not required." (*People v. Merriman* (2014) 60 Cal.4th 1, 38 [cleaned up].)

"[S]econd degree murder based on implied malice has been committed when a person does an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows th[e] conduct endangers the life of another and who acts with conscious disregard for life." (*People v. Watson* (1981) 30 Cal.3d 290, 300 [cleaned up].) "In short, implied malice requires a defendant's awareness of engaging in conduct that endangers the life of another—no more, and no less." (*People v. Knoller* (2007) 41 Cal.4th 139, 143.)

Evidence Code section 1101(b) permits "the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, . . . intent, preparation, plan, knowledge, [or] absence of mistake or accident . . .) other than his or her disposition to commit such an act."

The evidence in support of the misdemeanor charges related to prior incidents of reckless driving and driving under the influence was not offered in this case to establish Ayalaflores' propensity to drive drunk or recklessly. It was admissible for the murder charges to show Ayalaflores' knowledge of the dangerous and potentially deadly consequences of driving recklessly.

Reckless driving, whether by intoxication, rage, or irresponsibility, has personal and social consequences. (*People v. Ortiz* (2003) 109 Cal.App.4th 104, 115.) "[C]ourts have recognized repeatedly that a motor vehicle driver's previous encounters with the consequences of recklessness on the highway— whether provoked by the use of alcohol, of another intoxicant, by rage, or some other motivator—sensitizes [the driver] to the dangerousness of such life-threatening conduct." (*Id.* at p. 112.)

Five months before the fatal accident, Ayalaflores injured himself when he crashed his car after speeding along an emergency shoulder and veering through an intersection. He was cited for reckless driving. An officer warned him he could kill someone by driving so recklessly.

Two months before the fatal accident, Ayalaflores drove his girlfriend and her two children after a day of drinking. After speeding and weaving through traffic, he crashed into a truck in an intersection and injured a pregnant passenger, causing her to go into preterm labor. Ayalaflores was cited and informed that his license was being suspended. Ayalaflores acknowledged his decision to drive drunk put his children in danger. He promised his girlfriend he would not drink and drive again.

Despite all this, Ayalaflores did drive drunk again, with a blood alcohol level between 0.245 and 0.271. As with the prior incidents, he drove recklessly, sped past slower traffic, and drove into an intersection on a red light. This time he crashed into an oncoming car with fatal results.

This evidence was markedly different than the defendant's driving record offered in the case Ayalaflores relies on, *People v. Saucedo* (2023) 90 Cal.App.5th 505. In *Saucedo*, a defendant was convicted of murder and other offenses for a fatal collision that occurred when he was evading police in a stolen vehicle. (*Id.* at p. 507.) The appellate court concluded the trial

12

court erred in admitting evidence of prior traffic infractions and drug possession charges to show implied malice. The *Ortiz* inference did not apply because the prior offenses did not involve the same level of reckless driving as the fatal accident and the prior offenses did not result in injuries or other significant consequences. Nevertheless, the court concluded the error was harmless because there was ample evidence to support the conviction for implied malice murder absent the prior offenses. (*Id.* at pp. 510-512, 515-518.)

Here, in contrast, the evidence of the prior reckless and drunk driving incidents showed a pattern of increasingly dangerous behavior. The jury could reasonably infer from these prior encounters that Ayalaflores was, by his own admission, sensitized to the dangerousness and life-threatening consequences of driving intoxicated and recklessly.

Because the evidence regarding the earlier events was probative and cross-admissible for the murder charges, the court properly denied Ayalaflores' motion to sever.

b.

Additionally, the evidence related to the misdemeanor charges was not unusually inflammatory. Although the consequences of the fatal September collision were more serious, the April and July incidents involved similar patterns of reckless driving: speeding, weaving through slower traffic, and disregarding traffic signals before a collision. The evidence of Ayalaflores' level of intoxication in the July incident (twice the legal limit) was similar to that in the September incident (three times the legal limit). Witnesses on each occasion called 911 to report Ayalaflores' dangerous driving. Each of the three incidents featured some unique facts, but none was markedly more inflammatory.

c.

None of the crimes was particularly weak in comparison to the others based on the facts known to the trial court at the time of its ruling on the severance motion. (*Soper*, 45 Cal.4th at pp. 774 & 776, fn. 10.) As the trial court stated, the charges for the April, July, and September collisions were independently strong.

When multiple charges are brought together, "it always is possible to point to individual aspects of one case and argue that one is stronger than the other." (*Soper*, 45 Cal.4th at p. 781.) "A mere imbalance in the evidence, however, will not indicate a risk of prejudicial 'spillover effect,' militating against the benefits of joinder and warranting severance of properly joined charges." (*Ibid.*) "Furthermore, the benefits of joinder are not outweighed— and severance is not required—merely because properly joined charges might make it more difficult for a defendant to avoid conviction compared with his or her chances were the charges to be separately tried." (*Ibid.*)

As no factors weigh against joinder, we conclude the court did not abuse its discretion in denying the motion to sever the misdemeanor counts.

2.

We also "must . . . determine 'whether events *after* the court's ruling demonstrate that joinder actually resulted in "gross unfairness" amounting to a denial of defendant's constitutional right to fair trial or due process of law.'" (*Simon*, 1 Cal.5th at p. 129.) "In determining whether joinder resulted in gross unfairness, we have observed that a judgment will be reversed on this ground only if it is reasonably probable that the jury was influenced by the joinder in its verdict of guilt." (*Id.* at pp. 129-130.) Ayalaflores has not demonstrated any actual prejudice from any "spillover" effect of the joinder of the charges for trial. (*People v. Bradford* (1997) 15 Cal.4th 1229, 1315.)

14

Ayalaflores complains evidence from body worn cameras following the April and July collisions was inflammatory because it portrayed him in an unfavorable light. We disagree. The recording from the scene of the April incident showed an officer urging Ayalaflores to go to the hospital for injuries he sustained in the crash along with the statement the officer made explaining the consequences of reckless driving. And the recording from the July incident showed Ayalaflores' physical condition and demeanor just after the accident, which was relevant to his level of intoxication.

Similarly, the evidence regarding his subsequent statement to the child protective services investigator about how he endangered his children was not offered to show he was a bad parent, but to show his knowledge of the potential harm of driving under the influence.

Ayalaflores also contends the evidence regarding the numerous charges for events on separate dates was not simple for the jury because of the number of witnesses to each incident and the length of the trial. Although it was a lengthy trial, the presentation of evidence established that separate charges arose from the separate incidents. The prosecution's presentation in closing argument separated the charges by the dates of the incidents and pointed the jury to the appropriate instructions and evidence for each count. The prosecution did refer to the earlier incidents to support an implied malice finding for murder, but as we discussed, this evidence was cross-admissible. "[E]ven if the prosecution's closing arguments occasionally 'encouraged the jury to aggregate the evidence,'" this "record does not suggest that the jury was unable to decide each count separately as it was specifically instructed to do." (*People v. Gomez* (2018) 6 Cal.5th 243, 277.)

The jury was instructed that "[e]ach of the counts charged in this case is a separate crime. You must consider each count separately and return a

15

separate verdict for each one." (CALCRIM No. 3515; § 954) We must presume the jury understood and followed this instruction. (*People v. Lindberg* (2008) 45 Cal.4th 1, 26.) The jury considered the charges and submitted questions, including asking for a readback of testimony from one witness to the September event. The jury ultimately convicted Ayalaflores on all charges.

Ayalaflores has not demonstrated actual prejudice resulted from joinder of the cross-admissible charges at trial. (*Bradford*, 15 Cal.4th at p. 1318.) Thus, we conclude he has not met the "high burden of establishing that the trial was grossly unfair and that he was denied due process of law." (*Soper*, 45 Cal.4th at p. 783.)

## C.

Ayalaflores finally contends the trial court abused its discretion and violated his due process rights by admitting into evidence the full 911 call from the witness who called moments after the September accident and reported his behavior in the minutes before the collision. The court admitted the full call was a relevant spontaneous statement. Ayalaflores contends the court should have redacted the witness' statements about him gesturing with his middle finger and cursing at her when she said he appeared intoxicated. He argues these statements constituted improper character evidence. We disagree.

"We review claims regarding a trial court's ruling on the admissibility of evidence for abuse of discretion." (*People v. Goldsmith* (2014) 59 Cal.4th 258, 266.) We will not disturb such a ruling unless appellant can show the "'trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.'" (*Ibid.*)

16

Contrary to Ayalaflores' contention, the 911 call was not offered as character or propensity evidence to establish bad or belligerent behavior. Instead, the evidence was probative to show Ayalaflores' state of mind in the moments before the fatal collision. Instead of stopping on the side of the road after cars honked at him for driving recklessly and the witness told him he appeared intoxicated, Ayalaflores made a profane gesture, cursed at the witness, and got back in his car to follow the witnesses. He sped past stopped vehicles and "floor[ed]" the accelerator moments before driving into the intersection where he fatally collided with another vehicle. In context, the entire 911 call was relevant evidence for the jury to consider in determining whether Ayalaflores acted with implied malice for purposes of murder. Because the trial court acted well within its discretion, we will not disturb its ruling.

III.

We affirm.

CASTILLO, J.

WE CONCUR:

BUCHANAN, Acting P. J.

RUBIN, J.

17